BROWN v. STANDARD OIL CO. OF NEW YORK et al.
BROOKS et al. v. BROOKLYN UNION GAS CO. et al.
(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 15.

NEGLIGENCE ⬅22—DANGEROUS INSTRUMENTALITIES—RUNNING INFLAMMABLE LIQUID INTO RIVER.

A water pipe leading into a separation tank in the yard of respondent's oil refinery, partly filled with sludge acid, which is inflammable, was accidentally left open, and the filling of the tank caused the sludge to run over the top, down its side, and upon the ground below. On its discovery a foreman ordered a watchman to flush off the tank and ground

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

with a hose, which was done, the water carrying the sludge running down a gutter and into the river at the foot of the street near by, where libelants' tug was lying at the bulkhead. A few minutes later flames broke out on the surface of the water, and before the tug could be moved it took fire and burned, with the loss of one life. *Held*, that a finding that the fire was caused by the sludge, so negligently permitted to run into the river, and that respondent was liable for the damage done was sustained by the evidence.

Appeal from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by Egbert N. Brown, Jr., James Brooks, and Andrew Bull against the Standard Oil Company of New York, the Brooklyn Union Gas Company, and the City of New York. Decree for libelants against the Standard Oil Company alone, and it appeals. Affirmed.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Ray R. Allen, both of New York City, of counsel), for respondent-appellant.

Foley Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for libelant-appellee.

Lamar Hardy, Corporation Counsel, of New York City, for appellee City of New York.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. Four libels against the Standard Oil Company to recover respectively damages for injuries to the tug Protector, for the death of her engineer, and for loss of the effects of the crew were consolidated and tried together in this action.

March 11, 1911, some time after 5 p. m., the tug Protector was lawfully lying at the bulkhead at the foot of North Twelfth street, Brooklyn, just about to take in water for her boiler tanks from a city hydrant. For a considerable distance on the north side of the street the Standard Oil Company has a refinery, with various sheds, buildings and tanks, extending to the end of the pier on the north side of the slip. On the south side of the street the Brooklyn Gas Company has a large plant, extending to the bulkhead and pier on the south side of the slip. Flames suddenly shot up some 12 feet high from the surface of the water around the tug, setting her afire, as a result of which she drifted from the bulkhead to the south side of the slip and sank. The bulkhead began to burn and the fire eventually spread to the sheds of the oil company on its pier and to the fence and coal elevator on the premises of the Gas Company. The crew had just time to escape from the tug to the stringpiece of the bulkhead except the engineer, who was burned to death.

The libels were filed against the Brooklyn Gas Company and the city of New York as well as against the oil company, charging the companies with maintaining a nuisance and with the escape of oil from their premises into the city sewer on North Twelfth street, and charging the city with negligence in not abating the nuisance. The District

Judge very properly found against the libelants on these points, and therefore dismissed the libels against the gas company and the city.

The oil company was carrying on a lawful business, and one in which, from its nature, fires were likely to occur. Therefore the principle of res ipsa loquitur does not apply. There being no contractual relation between it and the libelants the only duty it owed them was the exercise of ordinary and reasonable care, and the burden of proof that it had not exercised such care was on the libelants. Consistently with these principles of law the District Judge found the oil company guilty of negligence as matter of fact, and entered a decree in favor of the libelants. We have to inquire whether the evidence justified the conclusion.

The particular negligence found arose as follows: As one step in the refining of crude petroleum, either into naphtha oil (gasoline) or kerosene oil, it is treated with sulphuric acid. The acid takes out certain impurities and holds them, along with a percentage of oil not accurately proved in this case, in solution. This solution is called sludge acid and is pumped into a circular iron tank about 15 feet high containing water and there shaken up with air, with the result that the water combines with the acid and leaves the oil and tarry matters free. The purpose of the operation is to recover the acid and use it over again. This process is called separation, and the tank is called a separator.

On the day in question sludge acid had been run into one of the separators and at about 5:30 p. m. before the operation of separating had been begun, the oil company's night foreman noticed that a stream of liquid about 18 inches wide was flowing down the side of the separator. Examination showed that this was caused by the water valve in the pipe on the side of the separator having been partly opened by jarring on the line or by some such cause. The effect of the water continuing to flow into the separator after it was filled was to cause the sludge acid, which is lighter than the water, to flow over the top. There is nothing to show how long this overflow had been going on before the foreman discovered it. He closed the valve, and, as the sludge would burn the clothes or shoes of any one coming in contact with it, ordered a watchman to flush off the surface of the tank and of the ground where the sludge was with the ordinary corporation 3-inch hose. The sludge and the water together ran from the separator through a gate to a gutter on the north side of Twelfth street, and then some 200 feet down the street, crossing over to the south side and passing through an opening in the stringpiece into the river. About 15 minutes after the discovery of the overflow and perhaps ten minutes after the sludge had reached the river, the fire broke out as above described.

Some of the witnesses from the tug had observed oil floating on the surface of the water in the slip with the usual iridescent color. Two experts for the defendant testified that the fact of iridescence showed that the oil must have been very thin, not over 1/10,000 of an inch, and quite insufficient in quantity to produce the flames that broke out. They also said that in their opinion it would be impossible for the oil

247 F.—20

in the sludge acid carried by the water from the separator into the river to have caused the flames. Experiment with samples of sludge taken out of one of the separators in the usual course of refining showed that it was inflammable.

The District Judge found the defendant liable on the ground that it was the ignition of the sludge acid which caused the flames, and that the possibility of ignition was a result that should have been foreseen and guarded against. He said:

"As to the issue with reference to the oil company, I think that the testimony sufficiently shows the proximate cause of the fire was some substance which surrounded the tug and which caught fire from a means that is not exactly shown, but which should reasonably have been anticipated; that the material came from the acid separator; that it was negligence to allow a stream of water to carry material from the top of these acid separators to the slip, and therefore that the libelants should recover against the Standard Oil Company."

It appeared that there were factories and garages in other more distant parts of Brooklyn connecting with the sewer in North Twelfth street and the oil company contended that the oil on the surface of the river might have come from them. In view, however, of the fact that no fire on the water had been known or heard of by any of the witnesses in the last 20 years; that such an overflow of sludge from the separator was most unusual; that sludge was inflammable; and that the flames burst out a very short time after it was flushed into the river—we cannot regard the finding of the District Judge that it was the sludge that burned as mere conjecture; on the contrary it rested on very strong circumstantial evidence and should not be disturbed unless clearly wrong. We concur in his further finding that to flush the sludge into the river without foreseeing the danger of its being ignited was a want of ordinary and reasonable care.

The decree is affirmed.