**AMERICAN BARGE LINE CO. et al. v STOLL OIL REFINING CO. et al.**

**No. 1778.**

District Court, W. D. Kentucky.

March 30, 1938.

Harris W. Coleman (of Trabue, Doolan, Helm & Helm), of Louisville, Ky., and Herbert Shaffer (of Waite, Schindel & Bayless) and Phillip J. Schneider, all of Cincinnati, Ohio, for American Barge Line Co.

John E. Tarrant (of Bruce & Bullitt) and Shackelford Miller, Jr. (of Miller & Grafton), all of Louisville, Ky., for Stoll Oil Refining Co.

Hal O. Williams, Director of Law, and Lawrence S. Poston, Asst. Director of Law, both of Louisville, Ky., for City of Louisville.

SWINFORD, District Judge.

The American Barge Line Company is a corporation engaged in the business of operating boats and barges for transportation of freight on the Ohio river and the Mississippi river and their tributaries, with a wharf located on the bank of the Ohio river at the foot of Preston street, in the city of Louisville, Ky.

The Stoll Oil Refining Company is a corporation with its principal office and place of business in the city of Louisville, Ky., engaged in the business of refining oil into gasoline, kerosene, lubricating oil, fuel oil, and other oil products, and in storing and selling its products, with a refinery located on premises upon the bank of the Ohio river. The west line of the premises is approximately 925 feet upstream from the east line of the American Barge Line Company's property.

The city of Louisville has for many years maintained sewers for the purpose of conducting the offal and waste matter of the city into the Ohio river. One of the sewers, commonly known as the "Campbell Street Sewer," empties into the Ohio river approximately 700 feet upstream and to the east of the west line of the premises of the Stoll Oil Refining Company. Beargrass creek drains the eastern portion of the city of Louisville, empties into the Ohio river at the head of what is known as Towhead Island, approximately 6,000 feet upstream and east of the Stoll Oil Refining Company property.

In connection with the maintenance and operation of its refinery, the Stoll Oil Company maintained a system of drains within the refinery premises, through which certain drainage, including quantities of water and portions of every petroleum product and by-product in the various stages of manufacture, were carried into one or the other of a series of two compartments of a separator box, consisting of four compartments, located on top of the Ohio river bank. About 1931, respondent Stoll Oil Company installed a 14-inch drain pipe leading from its separator box into the Ohio river underneath the surface of the water, and extending out into the river approximately 50 feet. This water and portions of these petroleum products and by-products were car-

ried through this drain and discharged into the Ohio river. No permit had been issued to the Stoll Oil Company or any one else for the installation and maintenance of this drain into the Ohio river.

At or about 1 o'clock a. m. on June 8, 1934 a fire occurred along the Ohio river west or down stream from the Stoll Oil Company's drain and burned boats and barges moored along the shore from the fleet of the Nugent Sand Company, 300 feet below the Stoll drain, to Preston street, including the boats, barges, and other property owned by the American Barge Line Company and then moored on the river at or near its wharf. The exact point at which the fire started is in dispute, but it is not placed by any of the witnesses closer than a point 400 feet below the Stoll dock.

The libelants insist that there is shown by the evidence a violation of title 33 U. S.C.A. § 407. This section of the statute provides as follows: "It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed."

Libelants contend that the proof establishes the fact that the respondent Stoll permitted oil to run into the river through its drain.

There is no direct proof of this fact, except the testimony of the experts who were offered by the respondent Stoll. This testimony is to the effect that a plant of this kind and size and judging from the capacity of the refinery would of necessity discharge about one-half barrel of oil into the river every twenty-four hours.

It is my opinion that such a small amount of oil into such a great volume of water over a period of twenty-four hours would not be sufficient to bring the case within the rule laid down in the case of La Merced, 9 Cir., 84 F.2d 444. While there may be a violation of the federal statute which of itself would subject the offender to the penal provisions of the statute, it would be reductio ad absurdum to hold that the violation in such a negligible degree cast the burden of showing that this was not the proximate cause of the fire on the respondent.

In the La Merced Case, supra, it was shown that the vessel deliberately pumped a large quantity of oil into the bay.

This case falls squarely within the rule laid down in Brown v. Standard Oil Company of New York, 2 Cir., 247 F. 303, 305, wherein it was said: "The oil company was carrying on a lawful business, and one in which, from its nature, fires were likely to occur. Therefore the principle of res ipsa loquitur does not apply. There being no contractual relation between it and the libelants the only duty it owed them was the exercise of ordinary and reasonable care, and the burden of proof that it had not exercised such care was on the libelants."

The libelants offered direct testimony of 83 witnesses. Many of these witnesses testified that the fire broke out at the Nugent Sand Company dock (a distance of approximately 300 feet below the Stoll drain) and spread on the water down stream to the fleet of the libelant American Barge Line Company, on the surface of the water. They further proved that a black substance was discharged from the drainpipe on the night of the fire and within two or three hours of the time the fire started. That for months and years prior to the fire oil had been seen on the water. That a chemical analysis of the substance discharged from the Stoll drain showed gasoline and inflammable oils. That there was at the time of the fire a large area of the surface of the river covered with blue and orange flames.

That there was a distinct odor of gasoline on the shore near the water's edge, and the air was so charged with the fumes of gasoline that it was unsafe to light a cigarette. These and many other facts of like kind were proven by witnesses for libelant.

The respondent Stoll on the other hand introduced 109 witnesses to contradict or

896

refute these facts, generally and specifically.

There was no proof of an act of negligence on the part of respondent Stoll, and the proximate cause of the fire was left to surmise, speculation, and inference, and the libelants did not sustain the burden of proving that on the night of the fire the respondent Stoll negligently allowed inflammable oil products to be discharged into the river, and this negligence was the proximate cause of the fire. Jennings et al. v. Davis, 4 Cir., 187 F. 703; Hastorf v. Hudson River Stone Supply Co., D.C., 110 F. 669.

As to the respondent city of Louisville, libelants do not seriously contend that the proof offered connects it. Suffice it to say that there was no witness offered by the libelants who testified that inflammable liquid came from the city sewer at or near the time of the fire.

The findings of fact and conclusions of law are filed herewith.