Sherman **HALL**, Plaintiff,

v.

**E. I. DU PONT DE NEMOURS & COMPANY**, Defendant.

United States District Court
E. D. Kentucky, Jackson.
March 27, 1956.

Rose & Short, Beattyville, Ky., Strange & Pendleton, Stanton, Ky., for plaintiff.

Wyatt, Grafton & Grafton, Louisville, Ky., Peter J. Nolan, Wilmington, Del., for defendant.

FORD, Chief Judge.

This action was filed in the Circuit Court of Lee County, Kentucky, and thereafter removed to this Court where trial was had without a jury.

The plaintiff, Sherman Hall, an oil well drilling contractor, seeks to recover of the defendant, E. I. duPont deNemours & Company, the sum of $10,000 as damages to his drilling machine and equipment resulting from a fire that started shortly after the shooting by the defendant, on November 23, 1954, of an oil well belonging to the Lee Oil Company in Lee County, Kentucky. The complaint alleges that "the defendant, E. I. duPont deNemours & Company, its agents and servants, were so reckless, careless and negligent in the shooting of said well that they started or caused to be started a fire, which injured and damaged plaintiff's drilling machine and equipment." The defendant's answer admits that it shot the well for the Lee Oil Company on November 23, 1954, but denies all averments of the complaint with respect to the cause of the fire and with respect to damages. claimed by the plaintiff; the answer affirmatively pleads

contributory negligence and assumption of risk on the part of the plaintiff.

At a pretrial conference the plaintiff stated that his claim of liability upon the part of the defendant was based upon the following: (1) The doctrine of res ipsa loquitur; (2) failure of the defendant to exercise ordinary care in handling corks or stoppers removed from cans of explosives used in the well-shooting operation; and (3) failure of the defendant to exercise ordinary care to wash off or otherwise clean the derrick platform or floor adjoining the top of the well before the shooting took place. The pretrial order provided that upon the trial of the case the plaintiff would rest its claim upon the foregoing and that no other specific claims of negligence would be presented. However, when the case was called for trial the plaintiff moved the Court for permission to amend and enlarge the pretrial order by incorporating therein the following additional specific claims of negligence on the part of the defendant: (4) Failure of the defendant to test the shells before filling them with explosives; (5) failure of the defendant to use ordinary care to wash off or otherwise clean the top of the casing before shooting the well; (6) failure of the defendant to use ordinary care to rinse down the casing before shooting the well; (7) failure of defendant to use ordinary care to pour water in well on top of the shell before shooting the well. An order was entered, by agreement, permitting enlargement of the pretrial order as requested by the plaintiff; whereupon the action proceeded to trial.

After hearing the evidence, and considering the briefs and arguments of counsel for the parties, I am of the opinion that the plaintiff is not entitled to recover of the defendant and that the complaint must be dismissed on the merits for the reasons set out in the Court's findings of facts and conclusions of law set out herein as follows:

### Findings of Fact

1. The plaintiff, Sherman Hall, a drilling contractor, drilled an oil well for the Lee Oil Company upon a leasehold in Lee County, Kentucky, to a depth of approximately 962½ feet, completing said drilling at about one o'clock A. M. on November 23, 1954.

2. The defendant, E. I. duPont de Nemours & Company, was employed by the Lee Oil Company to "shoot" the oil well with explosive after completion of the drilling, and the defendant did so on November 23, 1954, after being advised that everything was in readiness for the shot, in strict accordance with directions that the defendant received from the Lee Oil Company, which directions called for sixty quarts of explosive to be lowered into the well, containing approximately 400 feet of fluid, in five shells (one shell containing 20 quarts and each of the other four shells containing 10 quarts) and detonated at a depth of 915 feet (the top of the shot) by means of a "jack-squib".

3. The results produced by the underground explosion were satisfactory in all respects to the Lee Oil Company, and the explosion produced the following normal reaction: Upon detonation of the underground charge there was a rumble; a few seconds later the fluid in the well gradually arose and sprayed out on the derrick platform and around the well; this was followed by the main force of the explosion which propelled large chunks of rocks, debris and pieces of metal (from the shells) into the air up and beyond the 40 or 50 foot high derrick, striking the derrick and other parts of the drilling machine and equipment and falling to the ground within an area that extended as far as 250 feet from the mouth of the well.

4. Shortly after the shooting of the well was completed, and while some of the rocks and debris was falling, there occurred on or above the surface a sudden flash that was followed by a combustion noise and flames, that went high into the air and involved a considerable area before settling down around the well, and that damaged the plaintiff's drilling machine and equipment which he had elected to leave at the well site during the well-shooting operation; the plaintiff knew that the well would be shot and had

ample opportunity to make ready and to remove his machinery and equipment and all hazards within his responsibility and control.

5. The plaintiff attempted, but failed, to establish that the fire was caused by the defendant's well-shooter (Gilbert Crowe) negligently failing to properly handle stoppers or corks removed from the cans containing the explosive substance or by his negligently failing to test the shells into which the explosive was poured or by his negligently failing to wash or otherwise clean the derrick platform, well top or well casing after the explosive was lowered into the well. Although the evidence as to customary procedures of well-shooters and as to the procedure actually followed by the defendant's well-shooter is conflicting, the plaintiff's witnesses testified that they were not at the well all of the time, and that they were doing other things, and that they merely did not see the defendant's well-shooter test the shells or do some other things which he testified that he did. Some of plaintiff's witnesses did positively testify that they saw the defendant's well-shooter take two, or perhaps three, stoppers out of the cans containing the explosive substance and set them upsidedown on the plank platform or floor. But there is no proof whatsoever that the defendant's well-shooter laid on the platform or floor any part of those stoppers that had contacted or might have contacted the explosive substance; nor was there any proof whatever that a single drop of the explosive substance actually got upon the platform or floor from the stoppers, or by spillage, leakage, or otherwise. Accordingly, the Court finds that the proof is insufficient to establish that the defendant's well-shooter was negligent or that the procedure employed by him was the proximate cause of the fire.

6. The plaintiff attempted, but failed, to establish facts that would justify application of the doctrine of res ipsa loquitur. Although the plaintiff assumed that the defendant used pure nitroglycerine in shooting the well, the evidence is uncontradicted that the explosive actually employed by the defendant was "EL-389B" which according to expert testimony: Is a desensitized substance containing only sixty percent of nitroglycerine; is vastly less sensitive to initiation than nitroglycerine; is not detonated by 30 calibre rifle fire; is not detonated by a number 6 blasting cap; is so insensitive that propogation detonators must be used between shells (in addition to a "jack-squib" containing dynamite and a cap) in order to procure detonation of two or more shells in an oil well; is rapidly absorbed into wood and would be impossible to detonate after absorption into wood; will not ignite or burn, even from the exceedingly hot flame produced by thermite; is not initiated by friction; has been classified by the United States Bureau of Explosives as a Class 5 explosive, which means that it may be transported by rail although pure nitroglycerine may not be transported by rail. Furthermore, the evidence in this case establishes that the plaintiff and his employees were entirely in control of several things, to-wit, a coal stove, a diesel engine, electric power lines and switch, that could have produced the fire by igniting inflammable natural gases which both sides agree were expelled in the shooting of the well. In addition, there is expert evidence to the effect that these gases can be ignited by static electricity and by friction sparks caused by stones and debris striking the wellcasing and other metal objects, including the metal portions of the plaintiff's drilling machine and equipment. Accordingly, the Court finds that the proof is insufficient to establish that the fire could have been produced from the explosive substance that was used by the defendant, or that it resulted from any instrumentality under the control of the defendant.

7. There is no proof by the plaintiff as to what actually caused the fire. The plaintiff testified that he does not know what caused it. His theory that it may have been caused from some of the explosive left on the platform is purely a

guess, and is not supported by some scintilla of evidence that a single drop of the explosive in fact got on the platform or that the explosive was capable of producing the fire even if some of it had been left on the platform or floor. Although witnesses for the plaintiff testified that, shortly before the well was shot, they moved a hot coal stove belonging to the plaintiff, some 75 to 150 feet, the evidence with respect to the moving of the stove makes it very probable that there may have been some live coals in the vicinity that were sufficient to ignite the gases expelled from the shooting of the well. There is also evidence that while the defendant's well-shooter was lowering the explosive the plaintiff's employees operated a diesel engine belonging to the plaintiff, sitting right beside the machinery which plaintiff claims was damaged, making it very probable that the hot engine or hot exhaust pipe could ignite such gases. There is also evidence that the plaintiff maintained a very crude electric switch (consisting of wires hooked together), tied to a sapling about 15 feet from the platform, and that, although one of the plaintiff's witnesses testified he unhooked the wires before the well was shot, the electric power was not shut off at its source with the result that it is very probable that the bare ends of the wires which were tied to the sapling could have created an arc or spark sufficient to ignite the gases. Accordingly, the Court finds that the exact cause of the fire is unknown but that it is more probable that it was the result of highly inflammable gases expelled from the well being ignited by one of the foregoing means which were in the exclusive control of the plaintiff, or by static electricity or friction sparks not under the control of the defendant, than by any act or omission claimed by the plaintiff on the part of the defendant or its well-shooter.

### Conclusions of Law

1. The doctrine of res ipsa loquitur does not entitle the plaintiff to recover of the defendant in this case for the following reasons: Under Kentucky law an inference of negligence under this doctrine merely shifts to the defendant the burden of going forward, which burden shifts back to the plaintiff whenever the evidence is against the presumption upon which the plaintiff relies; the burden of proving the ultimate issue (to-wit, the question of negligence that was the proximate cause of the injury or damage) never shifts from the plaintiff. Dunning's Adm'r v. Kentucky Utilities Co., 270 Ky. 44, 109 S.W.2d 6. Also under Kentucky law, the doctrine of res ipsa loquitur is not applicable where the instrumentality producing the injury or damage is unknown, or is not in the exclusive control of the defendant. See Kentucky Glycerine Co. v. Woodruff Development Co., 233 Ky. 325, 25 S.W.2d 736, where the Court of Appeals of Kentucky declined to apply the doctrine of res ipsa loquitur in an oil well-shooting case under much similar circumstances; also see the following decisions in other jurisdictions to the same effect; Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419; Eastern Torpedo of Ohio Co. v. Shelts, 121 Okl. 129, 247 P. 974; Pure Torpedo Corp. v. Nation, 327 Ill.App. 28, 63 N.E.2d 600; East End Oil Co. v. Pennsylvania Torpedo Co., 190 Pa. 350, 42 A. 707; Independence Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; E. I. Du Pont De Nemours & Co. v. Cudd, 10 Cir., 176 F.2d 855; Independent-Eastern Torpedo Co. v. Ackerman, 10 Cir., 214 F.2d 775.

2. The burden was upon the plaintiff to prove that some act or omission complained of constituted negligence on the part of the defendant, or its well-shooter, that was the proximate cause of the fire; there being no such proof, the plaintiff failed to sustain the burden of proof that rested upon him. See the cases referred to in paragraph 1 above.

3. The proof, and the reasonable inferences to be drawn therefrom, is too speculative and conjectural to constitute the basis of a judgment against the defendant. See the cases referred to in paragraph 1 above and also: Davies Flying Service, Inc., v. United States, D.C., 114 F.Supp. 776; American Barge Line

Co. v. Stoll Oil Refining Co., D.C., 22 F.
Supp. 894; Troy Refining Corp. v. Slag-
ter Oil & Grease Co., D.C., 61 F.Supp.
369; McAtee v. Holland Furnace Co.,
Ky., 252 S.W.2d 427; Rural Natural Gas
Co. v. Arvin, Ky., 270 S.W.2d 610; Bryan
v. Gilpin, Ky., 282 S.W.2d 133; Smith
v. Kentucky-West Virginia Power Co.,
Ky., 283 S.W.2d 376.

4. In view of the foregoing, it is un-
necessary to consider the questions of
damages, contributory negligence or as-
sumption of risk.

5. The plaintiff's complaint must be
dismissed on the merits at the plain-
tiff's cost.

Counsel for the defendant will sub-
mit an appropriate judgment in accord-
ance herewith.