[Civ. No. 9207. Third Dist. Dec. 18, 1957.]

VINTON H. DUTCHER et al., Appellants, v. CITY OF SANTA ROSA HIGH SCHOOL DISTRICT etc. et al., Respondents.

DENNIS REHE, a Minor, etc., et al., Appellants, v. CITY OF SANTA ROSA HIGH SCHOOL DISTRICT etc. et al., Respondents.

Carl D. Dorn and Lewis H. DeCastle for Appellants.

Lounibos & Lounibos for Respondents.

SCHOTTKY, J.—Vinton H. Dutcher and his wife, parents of Paul Dutcher, deceased, commenced an action against the city of Santa Rosa High School District and Rollo Norris, an instructor employed by the school to recover damages for the death of their son. In another action, Dennis Rehe, a minor, by his guardian *ad litem,* brought an action against the school district and Norris for damages for personal injuries suffered by him in the same accident. His father sued for expenses incurred. Both boys were members of a class in auto mechanics which the respondent Norris was teaching. Each complaint charges negligence on the part of Norris. The answers of respondents in each case denied any negligence on their part and also pleaded the defenses of contributory negligence and unavoidable accident.

The two cases were consolidated for trial, and upon the first trial the jury returned verdicts in favor of all of the defendants, and upon appeal to this court the judgment was reversed because of an erroneous instruction on assumption of risk and also because the court erred in giving an instruction on contributory negligence. (See 137 Cal.App.2d 481 [290 P.2d 316].) Upon a retrial, the jury again returned verdicts in favor of all defendants, and this appeal is from the judgment entered on the verdicts. The two actions were consolidated for trial and have been consolidated for appeal.

The evidence, which was substantially the same as upon the first trial, showed the following:

On December 11, 1952, Paul Dutcher and Dennis Rehe, as students at Santa Rosa High School, were attending their regular fifth period auto shop class which was held between 12:40 and 1:40 p. m. During the first part of the period the class was being instructed by respondent Rollo Norris, the

class instructor for approximately eight years, on the method of removing the valves from an automobile motor which was on a work bench. This motor was some 30 feet from an automobile owned by Donald Saunders to which Norris had his back, and his vision of Saunders' car was partially obstructed by another car. Following the completion of the instructions Norris was picking up the valve springs and equipment and putting them in a box while the students walked away toward other parts of the shop. Rehe and Dutcher stopped at Saunders' car. They saw Saunders inside the car doing some cutting with a torch and they stood and watched him. While they were standing alongside the car, the gasoline tank of the Saunders car exploded and a fire resulted, causing the severe injuries to the boys from which Dutcher ultimately died.

Just prior to the explosion Norris had left the work bench and had gone to the car owned by a student, parked some 6 or 7 feet to the rear of and at right angles to Saunders' car. He got under this car on the side nearest the rear of Saunders' car by the use of a "creeper," upon which the person lies down and pulls himself head first under the car. On getting out from under the car by use of the "creeper" Norris pulled himself feet first in the direction of the Saunders car and when arising from the "creeper" would necessarily face toward that car where Dutcher and Rehe were grouped around it watching Saunders work. He arose from the "creeper," turned to go back to the bench and had taken a few steps when the explosion occurred.

Donald Saunders was a regular member of the second period class in the auto shop and a regular member of the fifth period gymnasium class, and after answering roll call in his fifth period gymnasium class he left the class without permission or knowledge of his teacher and went to the auto shop at about 1 p. m. He had done this on other occasions during the semester. On two previous occasions Saunders had come to the shop during the fifth period when he did not have any conflicting class and Norris had given him permission to return. Respondents contend that Norris did not actually know that Saunders was in the shop during this particular fifth period. However, appellants point to the evidence that when Saunders entered the shop he stopped and talked to several of the students and then went to the bench where Norris was instructing. Saunders stood there for a while and then went to the tool room and obtained a cutting torch from

one of the student monitors. He passed by the work bench again and went to the oxygen and acetylene tanks which were about midway between the work bench where Norris was instructing the group and the left rear of Saunders' parked car. Saunders attached the cutting torch and lit it. After adjusting the flame, he walked to his car with the lighted torch and began burning a hole in its floor.

Norris had given general safety instructions to all his students about removing the gas tank before welding or cutting on a car. Saunders had removed the gas tank from his car about two weeks before the accident, placing the tank against the wall of the building. During the second period on December 11, 1952, Norris advised Saunders to take his gasoline tank and place it up on the frame so the janitor could sweep around the area. Saunders did not comply with this request. Saunders did not know where the gas tank was located when the explosion occurred.

Appellants' first contention is that the evidence was insufficient to support the judgment and that as a matter of law there was negligence on the part of respondents. They quote from *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594, at page 600 [110 P.2d 1044] ·

". . . It is the duty of the school authorities to supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.] The school district is liable for injuries which result from a failure of its officers and employees to use ordinary care in this respect."

Appellants contend that respondent Norris, the instructor in charge, failed to live up to this duty. They state that he failed to observe that Saunders was in the class although Saunders was within a few feet of him on several occasions and at one point stood with a lighted torch; and that he failed to observe the group around Saunders' car and the noise and light from the torch which should have caused him to investigate because the boys were supposed to be working on other projects. Appellants argue that a serious laxity existed in the instructor's supervision by permitting so dangerous an instrument as a cutting torch to be handed out to anyone who came to the tool room, even a non-member of the class. Even more serious, they state, is the instructor's indifference to the danger presented by the gas tank being in such proximity to the car.

However, respondents point out that as stated in *King* v. *Green*, 7 Cal.App. 473, at page 476 [94 P. 777]:

"Negligence is a comparative and not a positive term, and its use is relative whether applied to the negligence of the defendant or that of the plaintiff. For this reason in most cases it becomes a question of fact for the jury to determine who was negligent under the circumstances of the case."

We believe that the question of whether or not respondent Norris, the class instructor, was guilty of negligence which proximately caused the injuries to appellants was a question of fact to be submitted to the jury under proper instructions.

The next and most serious contention of appellants is that the court erred in giving the following instructions on assumption of risk:

"We have a legal principle commonly referred to by the term 'assumption of risk.' It will now be explained to you:

"A person is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

"A person who thus assumed a risk is not entitled to recover for damages caused without intention and which resulted from the dangerous condition or conduct to which he thus exposed himself.

"In determining whether or not a person had knowledge of a dangerous situation and whether, with such knowledge, he assented to or assumed a risk so as to bar recovery by him of damages for injury, you may consider his age, experience and capacity along with all the other surrounding circumstances as shown by the evidence.

"When we are concerned with a question as to the possible knowledge that may have existed in the mind of another person at a certain time, we must, of necessity, look to the indirect evidence unless he has admitted having such knowledge, and we may draw from that evidence whatever inferences our judgment directs to be reasonable."

Appellants do not question the correctness of the principles stated in the said instructions but they contend that the court should not have given any instructions on assumption of risk.

They rely heavily upon the following language of this court at page 484 of the former appeal:

"The court instructed the jury as follows: 'One, who for purposes of his own, voluntarily places himself in a position of danger, assumes the risks ordinarily incident to such a position and must use a quantum of care commensurate with the danger.' This instruction failed to inform the jury that before the defense of assumed risk can succeed the evidence must disclose either actual or implied knowledge of the risk and an appreciation of the magnitude thereof. *As applied to the two boys who stopped by Donald's car and for a short interval watched him operating the torch it is questionable whether from the evidence the jury could even have found support for a holding that they knew and appreciated the extent of the risk involved. To be sure, they knew that Donald was operating a torch, but there is no showing that they knew either how close the tank that exploded was to the flames and sparks being emitted by the torch or that they appreciated the danger of explosion if flames or sparks from the torch ignited gasses issuing from the tank.* Assuming, however, that such an assumption of risk might have been predicated upon the facts in evidence, nevertheless the court failed to inform the jury of the vital element of knowledge which must exist before a risk can be assumed and the assumption constitute a defense to a charge of negligence from the existence of the risk. [Citations.]"

Appellants argue that the above italicized language is the law of the case because in the second trial there was no substantial variation between the evidence in the first and second trials. Respondents in reply argue that this court in the former decision did not find that the doctrine of assumption of risk would not be applicable to the facts as shown by the record in the first trial, but held that the instruction given on assumption of risk was error because it excluded the essential element of knowledge.

Respondents seek to justify the giving of the challenged instructions upon the theory that the boys knew that there were hazards attached to the burning of a torch as they had received safety instructions and they were mature students mechanically. Respondents rely upon testimony of Saunders to the effect that Norris had told his class, at least, that welding should not take place near a gas tank and that the gas tank should be placed 10 feet away from the car while welding. Respondents argue that under the evidence in this

case the jury was entitled to draw an inference that the students voluntarily assumed a risk with knowledge of a dangerous situation. Respondents also dispute the statement of appellants that there was no substantial difference in the evidence in the two trials, but do not point out any difference in the evidence so far as what happened in the classroom at the time of the accident.

While it may be argued that the language hereinbefore italicized did not become the law of the case because it was not necessary to the former decision, we believe that it may well be applied to the facts in the instant case, as there was no substantial variation between the evidence at the two trials. We are convinced that under the evidence in the instant case it was error for the court to give instructions on assumption of risk. Paul Dutcher and Dennis Rehe were properly in the shop in pursuit of their regular studies, they went from the point where they had been instructed in the technique of removing valves from an engine to the place where they could grind those valves, and stopped for a moment to observe the work of Donald Saunders. ▮ It appears that they were prompted either by a legitimate interest in the work of Donald, or mere youthful curiosity, and there is nothing to show that they knew anything about the dangerous proximity of the gas tank to the torch or appreciated the danger of an explosion.

As stated in *Ziesemer* v. *McCarty,* 71 Cal.App.2d 378, at page 381 [162 P.2d 857]:

"The doctrine of assumption of risk presupposes the existence of a dangerous situation or condition, known to the plaintiff, who nevertheless chooses to enter upon or to remain within the area of risk. (§ 893, Rest. Torts, p. 491, Vol. 4.)"

We do not believe that the record would support a finding that the boys knew and appreciated the extent of the risk involved. We therefore conclude that the giving of the instructions on assumption of risk constituted reversible error and requires a reversal of the judgment.

The appellants next contend that the court committed prejudicial error in refusing to give their proposed instruction on required care and supervision of the use of a dangerous instrument. The parties agree that this instruction was based on the testimony sought to be obtained from Vernon W. Bailey, teacher of auto mechanics at Napa College, in regard to practices used in a Napa school. The trial court sustained objections to his testimony and in stating its ruling of the

objection said, "do not let us from Napa come over here and persuade you that our regulations are better than yours." Respondents contend that the proposed instruction should not have been given because it found no support in the record.

██ Appellants contend that it was error to disallow this testimony and that the judge's remark above was prejudicial. It appears from the record that appellants sought testimony from Bailey as to the particular practice at his school and the judge properly sustained the objection to such testimony upon the ground that this was not expert testimony as to general custom and usage but as to particular instances and therefore not admissible. ██ The general rule is well stated in 32 Corpus Juris Secundum, page 139, section 483, as follows:

"A custom or usage of trade must be established as a matter of fact and not of opinion, hence witnesses must testify to its existence as a fact. It must be proved by instances and not by opinion; but the proof must be of a general custom and not of an individual instance."

See also *Reagh* v. *San Francisco Unified School Dist.*, 119 Cal.App.2d 65 [259 P.2d 43]. ██ Inasmuch as there was no evidence upon which to base the instruction offered by appellants there was no error in refusing to give it.

Appellants complain also of several instructions given by the court on intervening cause, and proximate cause. We have examined these instructions and find no error in them.

The final instruction complained of by appellants reads as follows:

"The acts of the defendants herein complained of must be connected with the act of Donald Saunders in coming to the fifth period class and of burning a hole in his automobile in proximity to his gasoline tank, and it must not only appear that the injury complained of in the present cases were the natural and probable consequence, or negligent or unlawful act, if any, of the defendants, but that it ought to have been foreseen in the light of the attendant circumstances that Donald Saunders would follow the course of conduct that he did with the resulting injuries that are complained of. One may not be held responsible for those consequences following from an act which could not have been anticipated by a reasonably prudent person. In order to find the defendants liable in the present cases, you must find that the defendants were charged with the duty of anticipating as a matter of ordinary

consequence of their negligence, if any, that Donald Saunders would commit the acts performed by him.''

We believe that this instruction should not have been given and that it would tend to confuse and mislead the jury. It is properly subject to the objection that it is in the main argumentative and is the type of formula instruction that should not be given. We believe that a court should instruct a jury in simple, clear, and concise language as to the law applicable to the case and should leave the matter of argument to counsel for the respective parties. The giving of formula instructions has been condemned many times by our appellate courts but has seldom been made a ground for reversal.

In the case of *Taha* v. *Finegold*, 81 Cal.App.2d 536, the court said at page 543 [184 P.2d 533] :

''Formula instructions should not be given. As said in *Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66, 71 [96 P.2d 1022, 97 P.2d 844], formula instructions 'are not calculated best to serve most successfully the administration of justice. Their final disappearance will improve the conduct of court trials.' While the giving of formula instructions is not in itself prejudicial error, the giving of them here, added to the other circumstances of the case, combined to deny the plaintiff a fair trial.''

While the giving of this instruction would not constitute reversible error, we hold that it should not have been given.

No other points require discussion.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 15, 1958, and respondents' petition for a hearing by the Supreme Court was denied February 11, 1958.