[Civ. No. 25355. Second Dist., Div. Three. Dec. 22, 1961.]

AGNES M. HALL, Plaintiff and Respondent, v. MACCO CORPORATION, Defendant and Appellant.

Schell & Delamer, Richard B. Goethals and Earle K. Stanton for Defendant and Appellant.

William C. Wetherbee and Robert N. Stone for Plaintiff and Respondent.

VALLÉE, J.—Appeal by defendant Macco Corporation from a judgment for plaintiff entered on a jury verdict in an action for damages for personal injuries resulting from a fire and an explosion.

We relate the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to plaintiff, disregarding conflicting evidence and reasonable inferences that may be drawn therefrom.

On January 30, 1958, the day of the fire and explosion, defendant was in exclusive control of the old wooden Olive Street bridge in Paramount for the purpose of demolishing it. The bridge extended across the Los Angeles River and was heavily creosoted. A new concrete bridge across the river, 50 feet north of the old bridge, was partially open. Perry Horton, an employee of defendant, used an acetylene torch to burn the heads off bolts in the handrails along the top sides and in the sheathings on the under side of the old bridge.

There was an 8-inch, high-pressure gas pipe line containing live gas under the south side of the old bridge 12 inches below its surface.

Defendant knew of the gas flowing through the pipe line before the day of the fire. At no time did it check with anyone to determine whether the gas had been turned off. Horton testified: "Q. . . . Was there some difference between the timbers on top of the bridge and those down below where the sheathing was? A. Oh, yes, sir, there is a considerable amount of difference. Q. They are both wood; weren't they? A. They are both wood, yes. Q. And in each case they had the bolts going into them? A. That is true. Q. And yet down below you would burn off the head and let that fall and douse what was left in the wood with water, but up on top you let the head fall into the water and you didn't douse it? A. Well, it is not necessary, as I said before, it is not necessary down below. It is just a precaution that I took. Q. Was it any less necessary down below than it is up on top? A. I'd say it is not

necessary in either case. . . . Q. And if you thought some one was going to be there, you didn't; is that right? A. Well, if there would be somebody down there all the time with you working, you wouldn't have doused them. You would wait and see if something started smoldering and then you would douse it.''

About 5 p. m. Charles Herman was crossing the old bridge on his way home. As he was crossing he saw ''some smoke coming up over the side of the bridge on the north side.'' He reported what he saw to two of defendant's employees who were working on the job. Herman lived about a block and a half from the west end of the bridge. About 7 p. m. he saw the bridge burning in the same area where he had earlier seen the smoke.

Fire Captain Albert Gray, who conducted an investigation of the fire, testified: ''Q. And what did you note on the record there with reference to the cause of the fire? A. Under 'Cause' I stated 'Suspected'; except where the cause is definitely known by myself, I always state 'suspected.' 'Cause: suspected acetylene torch used in bridge dismantling operation ignited creosoted bridge materials.' ''

Plaintiff lived about 1,200 feet east of the old bridge. Shortly after 7 p. m. she heard sirens, and on looking out of her home she saw black smoke which appeared to be coming over a gas station and propane tank located across the street from her home. The fence around the propane tank had a sign on it which read, ''No SMOKING OR OPEN FLAME WITHIN 50 FT.'' A row of homes and a trailer park were between the propane tank and the burning bridge.

Plaintiff went out of her home. As she reached the gate, she saw smoke and flames. On cross-examination she testified: ''Q. Well, about how long after you were here at your house that you heard the siren before you left the house? A. Before I left the house? Q. Yes, ma'am. A. Well, I just kept thinking about it. I looked at that black smoke out through the door. I thought we better go to see what it is. It might—it might endanger our house, our home. Q. Ma'am, you thought that that fire down there someplace might endanger your home back here? A. It could catch all of those buildings afire, you know. Q. So you decided to get closer to the fire? A. I went down to find out what it was. . . . I wanted to see how serious it was whether I had to evacuate my home in a hurry or not. I had canaries and I wanted to get those canaries

out of the big cage in case——— Q. You went as a spectator, did you not? A. I guess you'd call it a spectator. All I was concerned about is my home. Q. So you went down a block and a half to the fire? A. I asked somebody on the way down there. I don't know who it was, what was burning and he said it was the trailer court. . . . Q. So you went as a spectator, is that correct? A. Well, if you want to say spectator, okay, but I wasn't concerned about going down there to looking at the fires. Q. That's what you did, isn't it, ma'am? A. Pardon me? Q. That's what you did? A. I went down to see how serious it was.''

We reproduce an exhibit used at the trial. (See below.)

Plaintiff's home is X-1. The propane tank is X-2. The new bridge is X-3. The old bridge is X-4. The orange line shows the perimeter of a crowd of 200 to 400 people who were on the new bridge and on Atlantic Place east of the old bridge. Officials stood between M-1 and the perimeter of the crowd and directed warnings to the crowd about the gas pipe line and the danger of an explosion.

Noel Manchester, Battalion Chief of the County Fire Department, testified: ''It was an enormously large fire and the resulting noise which involved the cracking of heavy timber burning and the splattering type of oil, creosote burning, so it would be an enormous fire, noisy.''

Plaintiff walked to P-1 where she remained several minutes. She then moved to P-2, where she stood for several minutes.

**PLAINTIFF'S EXHIBIT 1** (Profile through centerline of Olive St.,

P-2 was about 140 feet from the perimeter of the crowd and nearly 400 feet from the burning portion of the bridge. As she was standing at P-2 the gas line exploded. When the explosion occurred plaintiff was hit on the knee by debris and fell. The crowd ran from the explosion toward her. She tried to get up but was unable to, and the people trampled her. She was severely injured and permanently crippled.

The gas pipe line was not visible from the street. Plaintiff did not know of its existence or of the danger of an explosion. She heard no warning of any kind. A witness who was with her heard no warning. Charles Herman, who was in the vicinity of the east end of the burning bridge shortly before the explosion, heard no warning. There was no evidence that anyone heard a warning.

The first assignment of error is that defendant owed no duty to plaintiff.

Every person in his intercourse with his fellows owes to them certain natural, inherent duties, of which all normal persons are conscious, among which is the duty of protecting life and limb against peril when it is in his power to reasonably do so. (*Katz* v. *Helbing,* 205 Cal. 629, 638 [271 P. 1062, 62 A.L.R. 825]; 38 Am.Jur. § 14, p. 655.) Everyone is responsible for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. (Civ. Code, § 1714.)

Scale reduced for purposes of this Brief — one inch equals 143 feet

422

■■ "Liability for carelessly handling dangerous instrumentalities arises from failure to use due care, and such failure arises when the circumstances show that the actor had reason to know that his act was likely to produce injury to any person in the lawful pursuit of his own business and exercising reasonable care. [Citation.] When human life is at stake the rule of due care and diligence requires that without regard to difficulties or expense every precaution be taken reasonably to assure the safety and security of any person lawfully coming into the immediate proximity of the dangerous agency or device which is a peril to others. [Citations.] One who causes the use of a dangerous instrument in a negligent manner, or under such circumstances that he has reason to know it is likely to produce injury, is responsible for the natural and probable consequences of his act to any person not at fault." (*Been* v. *Lummus Co.*, 76 Cal.App.2d 288, 292 [173 P.2d 34]; *Warner* v. *Santa Catalina Island Co.*, 44 Cal. 2d 310, 317 [282 P.2d 12].) ■■ A person engaged in the use of a dangerous instrumentality must exercise ordinary care against causing a fire. (65 C.J.S. § 72e, p. 566.)

■■ To support a right of action for injury resulting from an explosion of gas there need be no privity between the party injured and the person by whose breach of duty the injury is caused. (38 C.J.S. § 45, p. 743.) If reasonably prudent persons would have adopted or taken steps to adopt some measure to protect the public against injury or damage, then it was the duty of defendant to act in a similar manner. ■■ "The actor is bound to know 'the qualities and habits of human beings and animals and the qualities, characteristics and capacities of things and forces insofar as they are matters of common knowledge at the time and in the community.' (Rest., Torts, § 290.)" (*Mosley* v. *Arden Farms Co.*, 26 Cal. 2d 213, 217 [157 P.2d 372, 158 A.L.R. 872].)

Whether the circumstances were such that defendant had reason to know its conduct was likely to produce injury to one in the position of plaintiff is a question of fact. ■■ " 'In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law.' (*Toschi* v. *Christian*, 24 Cal.2d 354, 360 [149 P.2d 848].)" (*Mosley* v. *Arden Farms*

*Co.*, 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872]; *Johnson* v. *Nicholson*, 159 Cal.App.2d 395, 409 [324 P.2d 307].)

Defendant's employee was using fire in close proximity to the highly inflammable creosoted timbers of the bridge; its agents knew of the gas line and its close proximity to the bridge; they knew timbers were smoldering; defendant knew or should have known of the danger of a fire and of an explosion. The evidence supports the implied finding of the jury that defendant was under the duty of anticipating that if the bridge caught fire the gas line might explode and cause injury to one in the position of plaintiff.

The next assignment of error is that plaintiff's injury was not caused by the fire or the explosion but by the stampeding of the crowd.

One may be liable for injury caused by an explosion where it can be shown the explosion would not have occurred but for his negligent act. (21 Cal.Jur.2d § 9, p. 555.)

Whether defendant's negligence was a proximate cause of the injury is a question of fact. (*Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742, 748 [135 P.2d 573]; *Bauman* v. *City & County of San Francisco*, 42 Cal.App.2d 144, 154 [108 P.2d 989].)

There was evidence some object flying through the air during the explosion struck plaintiff, causing her to fall. The jury could have inferred that the force of the explosion drove the debris which struck her down. There was no question but that the explosion caused the crowd to flee over her as she lay on the ground. Thus, the flying debris and the stampeding crowd contributed to cause plaintiff's injury. Both sources of injury were set in motion by the fire and the explosion. Defendant claims the conduct of the crowd was the sole proximate cause of plaintiff's injury, superseding that of the explosion, and thus the explosion was not a proximate cause of the injury.

The question to be decided by the jury was not whether defendant did foresee, or by the exercise of ordinary care would have foreseen, the identical consequences that happened, in order that its negligence be a proximate cause of the injury. The question was whether it was reasonably foreseeable that injury was likely to occur. (*Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 425 [218 P.2d 43]; *Osborn* v. *City of Whittier*, 103 Cal.App.2d 609, 615 [230 P.2d 132].)

Though an act or omission be removed from the injury and damage by intermediate causes or effects, yet if,

in a natural and continuous sequence, unbroken by any superseding cause, it produces that injury or damage, and if without it the injury would not have happened, it is a proximate cause of such injury or damage. Proximity in point of time or space is no part of the definition. That is of no importance except as it may afford evidence for or against proximity of causation. (*Hyer* v. *Inter-Insurance Exchange*, 77 Cal.App. 343, 347 [246 P. 1055].)

" ' "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (Rest. Torts, § 449.)' " (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 234 [282 P.2d 69].)

The general rule is that one who is responsible for disorder in a crowd is liable for injuries suffered by one although the acts of the crowd may have only contributed to the injuries. (See cases collected 38 A.L.R. 1531.)

It cannot be said as a matter of law that the movement of the crowd was an independent superseding force which relieved defendant from liability for its negligent conduct.[1] The facts generated a jury question. On the evidence the jury was warranted in finding defendant's negligence operated continuously to cause a chain of results which produced the fire: the attraction of plaintiff concerned about her home, the explosion of the gas line, the propelling of debris from the bridge, the debris striking plaintiff's knee, the frightening of the crowd so that in its efforts to escape the danger of harm from the explosion plaintiff was trampled.

Defendant requested and the court refused to give five instructions on assumptions of risk.[2] Defendant assigns error. In refusing the instructions the trial judge stated:

"I have concluded that it would be prejudicial error to instruct the jury on the legal principle of assumption of risk for the following reasons:

"If plaintiff has proved her claim of damages for personal injuries it rests on determination by the jury that the em-

---

[1] See *Buchholtz* v. *Standard Oil Co.*, 211 Mo.App. 397 [244 S.W. 973, 977]; *Silverman* v. *Usen*, 128 Me. 349 [147 A. 421, 422]; *Brown* v. *Standard Oil Co. of N. Y.* (2 Cir.) 247 F. 303, 306 [159 C.C.A. 397].

[2] The instructions requested were BAJI 207, 207-A, 207-B, 207-C and 207-D.

ployees and agents of defendant corporation were negligent in starting a fire by means of a blow torch and that the fire in continuous sequence spread to various parts of the wooden bridge and caused the igniting and explosion of high pressure gas in the pipe line of the Southern California Gas Company.

"Plaintiff voluntarily exposed herself to known dangers incidental to the fire in connection with the burning of the wooden bridge and did not assume any other or further risk.

"Without resorting to surmise and conjecture the jury could not draw a reasonable inference from the proved facts that despite her denial plaintiff must have had actual knowledge that the fire in reasonable probability would result in igniting the gas line and that such ignition would cause a 'ball of fire,' or a violent explosion.

"The instruction on assumption of risk is properly given only where the evidence shows actual knowledge of the danger involved. I hold that the circumstantial evidence does not support a finding that plaintiff had actual knowledge of the danger, which may or may not have caused her personal injuries, depending upon how the jury views the evidence."

The two essential elements of the doctrine of assumption of risk are voluntary exposure to danger, and actual, not merely constructive, knowledge and appreciation of the risk assumed. It is not assumption of risk where it merely appears that plaintiff should or could have discovered the danger by the exercise of ordinary care. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal. 2d 225, 235 [282 P.2d 69].) *Hawk* v. *City of Newport Beach*, 46 Cal.2d 213 [293 P.2d 48], says (p. 218): "The elements of this defense are a person's voluntary acceptance of a risk and an appreciation of the magnitude of that risk."

We agree with the trial judge. There was no evidence justifying an instruction on the theory that plaintiff assumed the risk by voluntarily placing herself in a position of danger from an explosion of the gas line. In the absence of evidence of actual knowledge of the gas line that should have reasonably warned her of the danger from an explosion, a finding that plaintiff assumed the risk of the explosion would be unwarranted. (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 139 [148 P.2d 19, 156 A.L.R. 1221]; *Dutcher* v. *City of Santa Rosa High School Dist.*, 156 Cal.App.2d 256, 260-262 [319 P.2d 14].)

Furthermore, there were two risks involved: risk of injury from the fire and risk of injury from the explosion. The

instructions requested were general. They did not distinguish between the two risks. There is no question but that plaintiff knew the bridge was afire. There is no question that her position was dangerous inasmuch as she suffered injury. Given the instructions as offered, the jury could have found plaintiff assumed the risk of injury without considering whether she had knowledge of the danger of the gas line exploding and assumed the risk of the explosion, and thus have found she was not entitled to recover. The instructions proposed would have been confusing and misleading.

 Defendant also appeals from the nonappealable orders denying its motions for a new trial and for judgment notwithstanding the verdict. The appeals from these orders will be dismissed. (*Teich* v. *General Mills, Inc.*, 170 Cal.App. 2d 791, 794 [339 P.2d 627].)

The appeals from the orders denying a new trial and for judgment notwithstanding the verdict are dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied January 8, 1962.