**HIGHWAY TRANSPORT COMPANY, Inc.,**
Appellant,

v.

**DANIEL BAKER COMPANY, Inc., et al.,**
Appellees.

Court of Appeals of Kentucky.

Oct. 8, 1965.

As Modified on Rehearing Feb. 11, 1966.

Oscar H. Geralds, Jr., Moloney & Moloney, Lexington, Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., for appellant.

Roy W. House, Lester H. Burns, Jr., John M. Lyttle, Pleaz Mobley, Manchester, Robert L. Milby, Hamm, Taylor & Milby, London, for appellees.

CLAY, Commissioner.

Several actions and claims for damages, consolidated for trial, arose out of a fire at the petroleum bulk plant of appellee Daniel Baker Company, and the respective claimants obtained judgments against appellant. Its principal ground for reversal is that it was entitled to a directed verdict.

The fire occurred in the late afternoon while appellant's employee was unloading gasoline from appellant's tank truck into Baker's overhead storage tanks. The only person present in the immediate area was this employee, a truck driver, and his testimony was substantially as follows. He properly stationed the tank truck and cut off the motor. Upon entering the pump house he observed a puddle of gasoline on the floor beneath the pump, indicating that it had been leaking. He swept out the gasoline and connected the discharge hose from the tank truck to the pump. After adjusting the proper valves, he opened the dome covers on the truck and started the pump by means of an electrical switch inside the pump house. He then spent a few minutes measuring the gasoline in the storage tanks, returned to the truck, and made out a delivery ticket. He returned to the pump house to hang up the ticket and as he removed his glove an explosion took place which knocked him backward.

No one could say what was the exact cause of this explosion and ensuing fire. Obviously it occurred as a result of the igni-

tion of gasoline vapor. It is appellant's contention that appellees failed to sustain the burden of establishing either negligence or causation because they failed to prove with any degree of certainty either the immediate source of the inflammable vapor or the place of the igniting spark.

Appellees apparently lean to the theory that appellant's driver negligently created a source of gasoline vapor when he opened the dome covers on the tank truck, which appears to be contrary to regulations of the Fire Marshal's office. Appellees contend these fumes were ignited by heat generated by the running truck motor. Though the driver stated the motor was not running, two witnesses for appellees testified they thought the motor was running at some time before the explosion. One of these witnesses did not know whether he heard the truck motor or the electric motor and pump in operation. The other witness was 150 to 200 yards away and on cross-examination he testified he was not aware that the electric motor and pump were in operation at the time. The testimony of these two witnesses was equivocal in character, but we need not decide if it rose to the level of substantial evidence. In any event, it furnished only a weak link in the chain of possibilities.

That appellees are not committed to this theory as to the cause of the fire is indicated by their suggestion that there were other possible sources of ignition. They say the fire may have started by static electricity generated by an improperly grounded truck or hose, or because appellant's employee was smoking on the job. (Not shown by evidence.) Appellant points out three other possible sources of gasoline vapor and seven other possible sources of ignition. The experts who investigated this accident could form no opinion as to its cause. Perhaps also of significance is the jury verdict which was predicated on the finding that appellant and its employee failed *"one or more* of their duties". (Our emphasis) In the light of the instruction which numerically specified appellant's duties (most of which were

not shown to have been breached), the verdict itself indicates speculation by the jury.

The immediate cause of this fire was obviously a combination of several factors or conditions, at least two of which must have existed simultaneously, i. e., the presence of combustible gasoline vapor and the igniting spark. A human agency may have created one or more of these conditions, but not necessarily so. A malfunction in a valve, or a switch, or the electric motor, or the pump, could have played a critical part.

It has many times been said that a jury verdict must rest on stronger support than surmise and speculation. Smith v. Kentucky-West Virginia Power Co., Ky., 283 S.W.2d 376; Kentucky Power Company v. Hogg, Ky., 301 S.W.2d 1; Burnette v. Moss, Ky., 381 S.W.2d 624; Hall v. E. I. Du Pont De Nemours & Company (D.C. Ky.), 142 F.Supp. 737.

In drawing the line between speculation and relative certainty, we have said that where the evidence is equally consistent with negligence and non-negligence the plaintiff, with the burden of proof, has not made his case. McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427. In other words, the claimant must introduce sufficient proof to tilt the balance from possibility to probability. Only then would a jury have some basis for drawing a reasonable inference that the accident was in fact caused by a combination of circumstances proximately traceable to a negligent act or acts.

The proof in this case establishes no more than possibilities or combinations of possibilities. We can find no evidence of substance which would even tend to tilt the balance of causation as between an unavoidable accident, a defective condition in the pump house, or negligent activity on the part of appellant's employee. It is pure guesswork that the fire was attributable to the latter and, of course, that is the only conjecture upon which appellant's liability can be based. Since the claimants' proof

did not pierce the veil of speculation, appellant was entitled to a directed verdict.

■ Had appellant made a timely motion therefore it would have been entitled to a judgment notwithstanding the verdict. CR 50.02 is very specific in requiring such motion to be made within 10 days after the reception of a *verdict* (when one is returned).[1] Appellant did not comply, but waited until after *judgment* was entered and then filed a motion under CR 50.03 asking for a judgment n. o. v. or a new trial. The motion for a new trial was timely under CR 59.02. It is contended by appellant that since CR 50.03 authorizes this joint motion, the time limit for filing a motion for a new trial controls.

Nothing in CR 50.03 relates to the time of filing. It cannot be construed as enlarging the time for making a motion for judgment notwithstanding the verdict. It does not create a new type of motion but, while recognizing a joint motion, provides the procedure to be followed in the event both motions are filed, either jointly or separately.

Since appellant failed to comply with the time limitation of CR 50.02, we do not have before us a motion for judgment notwithstanding the verdict. The relief we may accord is governed by its proper motion for a new trial.

We do not pass upon the question of whether the trial court properly ruled on appellant's motion to abate the proceedings involving appellee Daniel Baker Company.

The judgment to the extent that it disposes of the claims of Highway Transport Company, Inc. and Daniel Baker Company, Inc. against each other is reversed with directions to grant a new trial of those claims, and if on a new trial the evidence is substantially the same, the trial court will direct a verdict against the respective claimants on those claims.

HILL, J., not sitting.

1. CR 6.02 provides that the Court may not extend this time.