[Civ. No. 17685. First Dist., Div. One. Dec. 24, 1958.]

HARRY BISCHOFF, Appellant, v. NEWBY'S TIRE
SERVICE (a Partnership) et al., Respondents.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Appellant.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Respondents.

WOOD (Fred B.), J.—Plaintiff drove his car to defendants' tire shop, removed one of the wheels and took it and a spare tire into the shop for a tire change. Defendant Fred Lowery removed the old tire and was installing the spare when the head of the hammer he was using flew off and hit plaintiff in the face. Verdict and judgment were for defendants.

*Plaintiff's principal claim upon this appeal is the failure of the trial court to give his requested instructions on res ipsa loquitur.* Our examination of the record convinces us there was sufficient evidentiary basis for the giving of instructions on that subject and that it was prejudicial error to give none.[1]

There is no dispute that the head of the hammer did fly off. There is a dispute about plaintiff's position at the time. Plaintiff testified he was standing about 8 or 9 feet away, and that no one had told him to stand further back or go

[1]In their brief, defendants claimed there was no basis for application of the doctrine of res ipsa loquitur.

During the oral argument, they conceded there was such a basis but claimed that plaintiff was not prejudiced by the failure to instruct on that subject because, they asserted, the inference of negligence upon their part was overcome by their testimony.

The fallacy of that argument is that, under the circumstances of this case, it was for the jury, under adequate instructions, to consider all of the evidence and determine whether the inference had in fact been overcome; not for a court to determine that question as a matter of law.

somewhere else. Lowery testified that plaintiff "was knelt down, squatting" about 3 or 4 feet away, and had been told he had better move. Plaintiff testified that he requested tire irons be used in mounting the tire because sometimes a hammer will injure the bead. Lowery testified that no such request was made, and that a hammer such as was used would not damage the bead while a tire iron might. There was also some dispute as to the exact type of hammer that was used. Defendant produced a mallet with one rubber end and one metal end. Plaintiff testified that the hammer head which struck him had one blunt rubber end and a steel claw on the other end. Plaintiff did not know which portion of the hammer struck his face.

Lowery testified that if the handle of a hammer dries out, or if the steel wedge that is put in for the purpose of tightening the head on the hammer comes out, the head becomes loose. Usually a person can tell by the feel of the hammer while he is using it whether the head has become loosened. However, this particular time he did not detect the loosening, or else he would have fixed it immediately. Prior to plaintiff's accident, Lowery had never had an experience where he had no advance warning of the head becoming loosened.

Defendant Newby, who had had several years' experience as a service station attendant testified that this was the first time he could remember a hammer head flying off in his place of business and that it was almost impossible for a tight head to fly off.

■ Here is evidence of the existence of the three factors which bring the doctrine of res ipsa loquitur into play: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must have been caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." (*Barrera* v. *De La Torre*, 48 Cal.2d 166, 169 [308 P.2d 724], citing *Seneris* v. *Haas*, 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124]; *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], and Prosser on Torts, 2d ed. 1955, p. 201.)

Defendants contend that the last two conditions are not met in this case because "no harm would have befallen plaintiff had he merely exercised his own wits and knowledge as a craftsman and stood to either side of the line of downward swing of the hammer he was watching." The only case they

cite is *Weddle* v. *Heath*, 211 Cal. 445 [295 P. 832], where a judgment in favor of plaintiff was reversed. That was a case of an electric motor and a pump connected by a moving belt with which plaintiff made contact, to his injury; machinery that was under his charge, and which he had set in motion. That is quite different from a tool that breaks, flies apart and hits a bystander. In the Weddle case the accident was due to plaintiff's voluntary act in going too close to the moving parts.

Here, the position plaintiff took as a bystander had no causative connection with the separation of the hammer head from its handle, whatever bearing it may have had upon the issue of contributory negligence.

*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 444-445 [247 P.2d 344], explains what is meant by the third condition in res ipsa cases: "Some cases have stated that the accident must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citing cases.] This is allied to the condition of control by the defendant and has also been employed as a means of showing that the defendant, rather than the plaintiff, had control and was responsible for the injury. (See *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436].) It should not be confused with the problem of contributory negligence, as to which defendant has the burden of proof, and its purpose, like that of control by the defendant, is merely to assist the court in determining whether it is more probable than not that the defendant was responsible for the accident. As recently held by the Supreme Court of Oregon in a well reasoned opinion, a plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. (*Gow* v. *Multnomah Hotel*, 191 Ore. 45 [224 P.2d 552, 555-560, 228 P.2d 791].)" In the Gow case, plaintiff was injured when a counter stool on which he was sitting broke. The court cited numerous cases where res ipsa loquitur was held applicable even though contributory negligence was an issue in the case.

In *Stanford* v. *Richmond Chase Co.*, 43 Cal.2d 287 [272 P.2d 764], the plaintiff was a driver of a tractor with two trailers. Defendants were loading the trailers with boxes by using two fork lifts. Plaintiff was unconscious when he was found and could not explain the manner of his injury. From the physical evidence, it was "apparent that there are only two possible explanations for the cause of plaintiff's injuries: either he was struck by a fork lift or he fell from some portion of his truck."

568

(P. 292.) Plaintiff's testimony was that before he lost consciousness he did not climb on any part of the truck. The defendants' evidence concerning the course taken by the fork lifts would tend to show that plaintiff could not have been struck while standing between the trailers. The court held that a res ipsa instruction was properly given, stating at page 292: "The requirement of the doctrine of res ipsa loquitur that the plaintiff must show that he did not contribute to the accident . . . is satisfied by the evidence that plaintiff was standing between the two trailers when he was struck, since the jury could properly conclude that a reasonable man, under the same circumstances, would expect that the space would be a safe one within which to stand."

 Here, too, a reasonable man could conclude that standing 8 or 9 feet away from a person using a hammer would be a safe place to stand and that plaintiff's actions did not contribute to the accident in the sense that this condition is meant in res ipsa cases.

 As to the other conditions, if plaintiff's position is not considered a "cause" of the accident, it is clear that the accident was caused by an instrumentality within the exclusive control of the defendant. There is no suggestion in the evidence that there was anything unusual or defective about the tire that could have caused the hammer head to fly off. And there was testimony of defendants themselves indicating that the accident does not usually occur in the absence of negligence. Defendant Lowery testified that although it is not unusual for hammer heads to loosen, usually a person can tell by the feel of the hammer during its use that it is loosening. Defendant Newby testified that it was almost impossible for a tight head to fly off. The conclusion could be drawn from Lowery's testimony that he did not feel the head loosening, that this was a very peculiar hammer which loosened and flew apart within the space of a single stroke. However, the inference that he was not paying close enough attention to his work seems the more probable one. From the evidence a jury reasonably could infer that an accident such as here took place probably would not have occurred in the absence of negligence. We conclude it was a case appropriate for the giving of an instruction on res ipsa loquitur.

*Defendants further contend that plaintiff's requested instructions incorrectly stated the law, as an additional reason why their refusal was proper.* Their arguments consist of bare assertions without citation of a single case.

■ Plaintiff's first instruction[2] on this subject is a statement of the general principles governing the defendant's showing in a res ipsa case substantially as expressed in *Dierman* v. *Providence Hospital,* 31 Cal.2d 290, 295 [188 P.2d 12], which quoted from the Supreme Court's opinion rendered upon its denial of a hearing in *Bourguignon* v. *Peninsular Ry. Co.,* 40 Cal.App. 689, 694-695 [181 P. 669]. See also *Fry* v. *Sheedy,* 143 Cal.App.2d 615, 619 [300 P.2d 242] ; and *James* v. *American Buslines,* 111 Cal.App.2d 273, 276 [244 P.2d 503].

Defendants argue that the instruction puts the ultimate burden of proof on the defendants, contrary to the correct rule that the res ipsa doctrine only shifts the burden of going forward with the evidence. In the Dierman case, *supra,* the statement used in this instruction was quoted from the Bourguignon case to support the following propositions: ''This is not to say that a defendant in a res ipsa loquitur case has the burden of proving himself free from negligence. It is not to say that a defendant must in every case produce evidence of the actual cause of the accident. It is not to say that the question of the sufficiency of a defendant's explanation—or, if he cannot explain, the sufficiency of his evidence of due care and of impossibility of explanation—is not ordinarily for the jury.'' (P. 295 of 31 Cal.2d.) It would appear that to the Supreme Court the statement has the very meaning which defendants criticize it for not having.

■ The second proposed instruction[3] is criticized for not taking into account plaintiff's possible contributory negli-

---

[2] ''You are instructed that the accident in this case is of such a character that it speaks for itself. Under such circumstances, the defendants will not be held blameless except under a showing either (1) of a satisfactory explanation of the accident; that is, an affirmative showing of a definite cause for the accident, in which cause no element of negligence on the part of the defendants inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. In the latter case, inasmuch as the process of reasoning is one of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendants might have prevented.''

[3] ''It is only necessary for the plaintiff, in order to establish a prima facie case, to prove the fact of the accident and the injuries caused thereby. Having done this, he may rest, for the inference then arises that the accident occurred through the negligence of the defendants, and the burden of explaining that defendants were not negligent is then cast upon them. In order to overcome this inference of negligence, the defendants must show that the accident was not caused by their negligence

gence. This instruction merely states that an inference of defendant's negligence arises. The jury was fully instructed on contributory negligence. To combine the instructions would only create confusion.

In addition, defendants say that the last sentence of the first paragraph of this instruction requires the inference to be "overcome" by the defendants and thus would cast upon them the burden of proving by a preponderance of evidence they were not negligent; also, that it is inconsistent with the remainder of the instruction and would, therefore, create confusion.

The word "overcome" does not necessarily have such a meaning. ■ As said in *Odden* v. *County Foresters etc. Board,* 108 Cal.App.2d 48, 50 [238 P.2d 23], a presumption "is overcome if sufficient evidence is introduced to balance the presumption." ■ Here, such a meaning is clear in view of the context in which the word appears. It is explained, not contradicted, by the sentences which follow it in this instruction. Moreover, the court adequately instructed on the burden of proof. There was no need to deal with that subject in this instruction. (See *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 95 [286 P.2d 809].)

The third proposed instruction is also objected to on the ground that it states nothing about plaintiff's possible contributory negligence, an argument not well taken for reasons already indicated.

The fourth proposed instruction is BAJI No. 206-B.[4] The form of this instruction was approved in *Hinds* v. *Wheadon,* 67 Cal.App.2d 456, 466 [154 P.2d 720]; *Bazzoli* v. *Nance's Sanitarium, Inc.,* 109 Cal.App.2d 232, 239, 242 [240 P.2d 672]; *Meyers* v. *G. W. Thomas Drayage etc. Co.,* 108 Cal.App. 2d 529, 532-533 [239 P.2d 118]; and *Silva* v. *Pacific Greyhound Lines,* 119 Cal.App.2d 284, 287 [259 P.2d 743]. De-

---

or was a result of an inevitable casualty, or of some cause which human care and foresight could not prevent.

"The rule of res ipsa loquitur is not merely a rule of evidence shifting the burden of going forward with proof, for the inference of negligence under the rule does not disappear when met with substantial credible evidence of due care. It remains in the case throughout, to be given consideration by the jury in your weighing of the whole case.

"I instruct you that such an inference of negligence is in itself sufficient to satisfy the burden placed upon plaintiff to prove his case by a preponderance of the evidence."

[4]The instruction is referred to in defendant's brief as "garbled," but the only apparent change is the substitution of "reasonable care and diligence" for "ordinary care and diligence."

fendant's only complaint about it is that it "would have excluded from consideration the existence of the final operative cause of the plaintiff's injury," his position when hit. The distance plaintiff stood from Lowery during the substitution of tires (as to which there was a conflict of testimony) had no causative connection with the flight of the hammer head from its handle, whatever bearing it may have had on the issue of contributory negligence.

In view of these conclusions, it is unnecessary to consider other points discussed by the parties upon this appeal.

The judgment is reversed.

Peters, P. J., and Bray, J., concurred.