[L. A. No. 27113. In Bank. May 14, 1963.]

EDWARD SHAHINIAN, Plaintiff and Appellant, v. JOHN McCORMICK et al., Defendants and Respondents.

Gifford, Wyse, Darby & Franciscus, Darby, Fleming, Anderson & Hager and Richard M. Darby for Plaintiff and Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendants and Respondents.

PETERS, J.—Plaintiff appeals from a judgment for defendants entered upon a jury verdict in an action for personal injuries suffered in a water skiing accident. Plaintiff alleges prejudicial error in the refusal of the trial judge to give certain instructions on the doctrines of res ipsa loquitur, assumption of risk, and last clear chance.

Defendants, Mr. and Mrs. McCormick, went water skiing with plaintiff Shahinian, and his wife, using the McCormicks' newly acquired 16-foot outboard motorboat. The first day of skiing passed uneventfully. On the second day the two men decided to water ski in tandem, so that neither was available to drive the boat. Mrs. Shahinian declined to do so, but Mrs. McCormick was prevailed upon to do it. Because she had not previously driven this boat, although she had driven other boats, and had never driven a boat while towing or retrieving skiers, Mr. McCormick instructed her for about 30 to 45 minutes in the operation of the boat and in the proper techniques required in towing and retrieving a downed skier. Mrs. McCormick successfully drove the boat towing the two men for about half an hour, when they dropped their tow lines and waited in the water, some 300 feet apart, for Mrs. McCormick to circle and pick them up. She first drove to where Mr. McCormick was waiting, but he wanted to ski some more and told her to go and pick up plaintiff. The testimony as to what followed is highly conflicting, but it is clear that when the boat was within a few feet of plaintiff, Mrs. Shahinian, who was riding in the rear of the boat, screamed and about simultaneously Mrs. McCormick executed a hard right turn causing the stern of the boat to swing left and pass over plaintiff who simultaneously attempted to dive under the boat. The attempted dive was ineffectual because of the large, vest-type life preserver plaintiff was wearing. Plaintiff was struck by the propeller of the outboard motor resulting in serious injuries to his left arm.

Plaintiff contends that it was prejudicial error to refuse to instruct the jury on the doctrine of res ipsa loquitur. Defendants, while not challenging the form of the proffered instructions, contend that the doctrine was not applicable. The refused instructions would have submitted to the jury the three substantive elements of the doctrine and would have told the jury that if they found that the facts of the case

satisfied those requirements then an inference of negligence on the part of defendants arose.

These instructions should have been given. All three elements of the doctrine were satisfied. ■ In *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258] at page 489, these elements were summarized as follows: ''The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, Torts, p. 295.)'' ■ The question is one of probabilities and the doctrine ''is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible.'' (*Di Mare* v. *Cresci*, 58 Cal.2d 292, 298-299 [23 Cal. Rptr. 772, 373 P.2d 860].)

■ There is no doubt at all that the first two elements of the doctrine were here shown to exist. ■ It is common knowledge that boats, like automobiles (*Linberg* v. *Stanto* [*Stango*], 211 Cal. 771, 774 [297 P. 9, 75 A.L.R. 555]), do not ordinarily run over people when driven in a prudent manner. It is also undisputed that Mrs. McCormick had sole control of the boat at all relevant times here.

■ The third element was also present. ■ To establish a res ipsa loquitur case plaintiff need only establish that it was more probable than not that defendants' negligence caused the accident. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 299.) Plaintiff can do this by ''. . . showing that the defendant was responsible for all reasonably probable causes to which the accident could be attributed. Here again the plaintiff needs only a preponderance of the evidence, and he need not definitely exclude all other possible conclusions. . . . Where such other causes are in the first instance equally probable, there must be evidence which will permit the jury to eliminate them; . . . Only enough is required, however, to permit a finding as to the greater probability.'' (Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal.L.Rev. 183, 197-198.)

■ Mrs. Shahinian testified that her scream was evoked by the fact of her husband's imminent peril. The cause of that peril was either Mrs. McCormick's negligence, as plaintiff

seeks to prove, or her inexperience in maneuvering the boat, or plaintiff's attempted dive, or a combination of these factors. It would seem most probable that the scream did not create the peril, but rather was born of it. This probability is fortified by the fact that plaintiff did not hear the scream, yet he attempted to dive. The most likely explanation (as given by plaintiff) was that the dive, like the scream, was a natural reaction to an imminent peril. There was, therefore, sufficient evidence which would permit a jury to determine that the scream was a less probable cause than negligence on defendants' part.

The fact that plaintiff was not inactive at the time of the accident does not prevent the operation of the doctrine. As Dean Prosser states: "Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. . . . But the requirement may easily be misunderstood. The plaintiff is seldom entirely static, and it is not necessary that he be completely inactive, but merely that there be evidence removing the inference of his own responsibility. . . .

". . . Even where the question of plaintiff's own contribution is left in doubt by conflicting evidence, the principle may still be applied under proper instructions to the jury." (Prosser, Torts (2d ed. 1955) § 42, pp. 208-209.)

In *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 444-445 [247 P.2d 344], it was said: "Some cases have stated that the accident must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citations.] This is allied to the condition of control by the defendant. . . . It should not be confused with the problem of contributory negligence, as to which defendant has the burden of proof, and its purpose, like that of control by the defendant, is merely to assist the court in determining whether it is more probable than not that the defendant was responsible for the accident. . . . [A] plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. [Citation.]"

In the instant case plaintiff testified that he made the attempted dive because he believed he was in imminent danger of being run down. That this belief was justified was borne out by the ensuing accident. Defendants contend that

the attempted dive amounted to contributory negligence. It is clear, however, from the testimony of the Shahinians, that the jury could reasonably have concluded that the dive was not a cause of the accident and was not a negligent act but instead was, like Mrs. Shahinian's scream, a result of defendant wife's inexperience or negligent handling of the boat or both.

Even if plaintiff's attempted dive were a negligent act, an inference which would not seem to be supported by the evidence, that fact would not preclude application of the doctrine of res ipsa loquitur if that negligence was not the proximate cause of the accident. (*Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 502 [15 Cal.Rptr. 161, 364 P.2d 337].) In *Bischoff* v. *Newby's Tire Service,* 166 Cal.App.2d 563 [333 P.2d 44], an analogous case, it was held that plaintiff, who was struck in the head by a hammer head which flew off defendant's hammer, had a right to a res ipsa loquitur instruction because even though he may have been contributively negligent by standing in the direct line of the hammer, that fact "had no causative connection with the separation of the hammer head from its handle, whatever bearing it may have had upon the issue of contributory negligence." (P. 567.)

The evidence of the events immediately surrounding the accident was conflicting. On these facts it was for the jury to determine whether this was a res ipsa loquitur case and, if so, to draw the inference of negligence required thereby. As was said in *Seneris* v. *Haas,* 45 Cal.2d 811 [291 P.2d 915, 53 A.L.R.2d 124] at pages 826-827: " 'Where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present. . . .' [Citations.] The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities (Prosser, *Res Ipsa Loquitur in California,* 37 Cal. L.Rev. 183, 194-195). The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could

not draw it. [Citation.] The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved [citations]."

It thus appears that all of the substantive elements required for a res ipsa case were here shown to exist. It remains to be determined whether there was any procedural reason why instructions on the doctrine should not have been given. We think not. Certainly it cannot be contended that, because plaintiff attempted by some evidence to show the cause of the accident, he is precluded from the benefits of the doctrine.

 As was recently stated by this court in *Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 299: "The introduction of evidence of specific acts of negligence does not deprive the plaintiff of the benefit of the doctrine unless the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law thus eliminating any justification for resort to the inference of negligence. [Citations.] . . . If the rules were otherwise, a plaintiff would be penalized for producing all of the evidence he has as to the cause of the accident, and in some cases the trier of fact might be denied evidence useful and relevant to the proper determination of the case."

 The cause of the accident was not shown as a matter of law. There was a basic dispute on this issue. From the evidence the jury might have found the cause to be negligence on the part of the plaintiff, or on the part of Mrs. McCormick, or her inexperience, or Mrs. Shahinian's scream, or some combination of any of these possibilities. Mrs. McCormick testified that it was a clear day, that she could clearly observe plaintiff down in the water and that she watched him throughout her approach to him and was not distracted in any way; that plaintiff was not directly ahead of the boat but was about 5 feet off to the left as she neared him; that the boat was within a few feet of plaintiff when Mrs. Shahinian screamed whereupon she immediately turned the boat sharply to the right and pulled back the throttle into stop position; that the boat came to a complete stop some short distance beyond where plaintiff was struck; that the boat was "barely moving" when it hit plaintiff; that she saw plaintiff dive although she could not say whether he attempted to dive before or after Mrs. Shahinian screamed.

Mrs. Shahinian was standing in the rear of the boat acting as an observer. It was her duty to keep the driver informed

of the skiers' activities and to wave off other boats in the area. Mrs. Shahinian testified that, as defendant wife pulled away from Mr. McCormick and moved towards plaintiff, she noticed another boat in the area and stood up to give the appropriate signals and continued to do so until the other boat left their area; that as a result she was looking in the opposite direction from that in which the boat was traveling and was not watching her husband as they approached him; that when she did turn around she saw the plaintiff was "immediately in front of . . . [the boat]" just to the left of the keel or center line and she saw that the boat would strike him unless it was turned; that plaintiff was then only one or two boat lengths (16 to 32 feet) away and that the boat was still traveling about 15 miles per hour; that she screamed; that she did not know where Mrs. McCormick had been looking but that Mrs. McCormick then "threw her hands off the wheel and said, 'My God,' and then grabbed and cramped [the wheel] to the right"; that she did not see Mrs. McCormick touch the throttle; that the boat came to a stop approximately 20 feet away from where plaintiff was struck.

This does not constitute proof of the cause of the accident, and the care exercised by defendant as a matter of law. Mrs. McCormick testified that she watched plaintiff throughout the time she was approaching him. But Mrs. Shahinian testified that she turned around, saw the imminent danger, screamed, and at that point Mrs. McCormick, after an initial start of alarm, began to take action to avert disaster. From this testimony a jury could properly infer that Mrs. McCormick was not looking at plaintiff down in the water but was in fact inattentive, and therefore negligent. This, however, is left to inference; the record discloses no specific testimony that defendant was inattentive. Likewise there is conflicting testimony regarding the speed of the boat as it reached plaintiff and whether or not Mrs. McCormick attempted to stop the boat immediately. This is not proof as a matter of law of the cause of the accident or of the care exercised by Mrs. Mc-Cormick. It does not furnish a complete explanation of the occurrence; it does leave room for inference. (See Prosser, Torts (2d ed. 1955) § 43, p. 214.)

Even if it could be said that there was testimony which tended to show specific acts of negligence or which touched upon the cause of the accident, that fact alone will not deprive the plaintiff of a res ipsa loquitur instruction. The policy involved was aptly stated by this court in *Leet* v.

*Union Pac. R. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008] at pages 621-622: ''If, because of the circumstances of the case and the probabilities, an inference of negligence is raised, the doctrine should be applied, it is difficult to see why its application should be denied merely because plaintiff proves specific acts of negligence. There is no reason why such proof should wholly dispel the inference any more than it would in any other case. The plaintiff is penalized for going forward and making as specific a case of negligence as possible. If he endeavors to make such a case he runs the risk of losing the benefits of the doctrine to which the circumstances entitle him. Rather than place him in such a position he should be encouraged to prove as much as possible. The end result is not injurious to the defendant. He is not injured by the fact that the inference of negligence arose. The circumstances established a foundation therefore based upon probability. Indeed, he is in a better position as he has specific evidence to meet before the trier of fact that may be helpful to him. The case goes to the trier of fact with the general inference of negligence, plus other evidence of specific acts of negligence, to be weighed against defendant's showing. There is no reason for applying a different test for determining when the inference is wholly dispelled as a matter of law in a case where res ipsa loquitur is applicable, than is used in the case of any other inference. The instances in which an inference is dispelled are rare [citations].''

The question of negligence was a close one. As there was conflicting testimony and disputed facts which would support a jury verdict either way, it cannot be said as a matter of law, that, had the instructions on res ipsa been given, the verdict would be for the defendants. Thus, the refusal to instruct the jury on the doctrine was prejudicial error. (Cal. Const., art. VI, § 4½; Code Civ. Proc., § 475; and see *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614, 623-624 [255 P.2d 785].)

Respondents argue that there could be no prejudice in refusing the res ipsa loquitur instruction because, in any event, it was most unlikely, in view of the evidence supporting the doctrine of assumption of risk, that the jury based its verdict on lack of negligence. Aside from the fact that the instructions on the doctrine of assumed risk were inadequate (later discussed) the point is without merit inasmuch as a general verdict is involved and it is therefore impossible to determine upon which ground the jury based its verdict.

The trial court properly instructed that an ordinance of Madera County made it ''unlawful . . . for any person to operate or use a boat at a speed in excess of 5 mph . . . within 100 feet of any person who is engaged in bathing or swimming, skiing or aquaplaning,'' and that if it was found that defendant violated this ordinance there arises a presumption that he was negligent, which presumption can be rebutted by evidence of excuse or justification. The jury was then instructed on the defense of assumption of risk.

The trial court refused the following instruction requested by plaintiff: ''If you find that the defendant violated said ordinance and that the violation was a proximate cause of an injury found by you to have been suffered by plaintiff, then you are instructed that the principle of assumption of risk does not apply and is not a defense.'' It is contended that such an instruction is not required where the parties are equal voluntary participants in the transaction causing the injury, as here, and only applies where the position of the parties is unequal. This is too narrow an interpretation of the rule.

The key question in such cases is whether public policy as declared by a statute or ordinance precludes a defendant from asserting the defense of assumption of risk against a plaintiff. (See Prosser, Torts (2d ed. 1955) § 55, pp. 313-314; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 430-431 [218 P.2d 17].) That is a legislative not a judicial question. The legislative body here involved has fixed that policy in the instant case.

The Madera County ordinance was obviously intended to protect skiers such as plaintiff from speeding boats, and this purpose would be frustrated if it were held that this risk was assumed by plaintiff.[1] Thus, if, as plaintiff argues, the jury could, from the conflicting testimony, have found that Mrs. McCormick was exceeding 5 miles per hour within 100 feet of plaintiff, in violation of the ordinance, and further, that this act was the *sole* proximate cause of the accident, then it would have been proper to instruct the jury that the doctrine of assumption of risk was not applicable. Plain-

[1]Defendants suggest, but do not seriously argue, that the ordinance does not apply to skiers. Whatever merit that argument may have as to the towing of skiers, it has no merit when applied to the retrieving of skiers. One of the purposes of the ordinance was clearly to protect such persons.

tiff's requested instruction, however, was not limited to situations where the violation of the ordinance was the *sole* cause of the accident but stated the doctrine of assumption of risk was not applicable if it was "*a* proximate cause." Thus the proffered instruction was too broad and, of course, the trial court has no obligation to correct such an inadequate instruction. (E.g., *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 235 [282 P.2d 69].) This rule is particularly applicable here because the jury could have found that Mrs. McCormick's inexpertness in operating and maneuvering the boat was a proximate or a contributing cause of the accident. There was ample evidence that plaintiff knew that Mrs. McCormick had never before operated this boat, that she had never previously towed skiers and retrieved them from the water, and that plaintiff was apprehensive about being towed by her. If Mrs. McCormick's inexpertness was found to be a proximate cause of the accident then it would not frustrate the purpose of the Madera County safety ordinance to permit this risk to be assumed, and the doctrine of assumption of risk would be applicable. On retrial of this case it would be proper to instruct the jury to the effect that under the ordinance the doctrine of assumption of risk is not applicable if the jury should find that speeding was the sole or the proximate cause of the accident, but is applicable if the jury should find that some other act of negligence caused the accident.

Even if the doctrine of assumption of risk were here applicable, the instructions given on it were inadequate. The jury was instructed that in order to find that plaintiff assumed the risk they must first find (1) that he had actual knowledge of the danger and (2) had freedom of choice.[2]

---

[2]One instruction (BAJI No. 207) in part read: "A person is said to assume a risk when he freely, voluntarily and knowingly manifests his assent of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger."

And another instruction (BAJI No. 207-B) read: "It should be noted that to bar recovery, assumption of risk must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger. Second, he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question."

The other two instructions on assumption of risk concerned the distinction between contributory negligence and assumption of risk (BAJI

These instructions did not, as would the instructions requested by plaintiff but refused by the trial court,[3] tell the jury that they must also find that he appreciated the magnitude of that risk. The series of instructions given by the trial court were approved in *Ching Yee* v. *Dy Foon,* 143 Cal.App. 2d 129, 138-139 [299 P.2d 668], where the court held that the term "actual knowledge of the danger" expresses the same thought as "appreciation of the danger," that is, that the two phrases are interchangeable.

However, the recent opinions of this court dealing with the problem of assumption of risk have settled this problem contrary to the *Ching Yee* case. ▇▇▇▇ Actual knowledge of the particular risk and appreciation of the magnitude thereof are not interchangeable but are independent and essential elements of the doctrine. (*Hawk* v. *City of Newport Beach,* 46 Cal.2d 213 [293 P.2d 48]; *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904]; *Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375, 384-385 [240 P.2d 580]; see also the excellent opinion in *Hook* v. *Point Montara Fire etc. Dist.,* 213 Cal.App.2d 96 [28 Cal.Rptr. 560], and cases there discussed; and see *Hall* v. *Macco Corp.,* 198 Cal.App.2d 415, 425 [18 Cal.Rptr. 273]; *Bilyeu* v. *Standard Freight Lines,* 182 Cal.App.2d 536, 545 [6 Cal.Rptr. 65]; *Alvarado* v. *Anderson,* 175 Cal.App.2d 166, 176 [346 P.2d 73].) ▇▇▇▇ The two elements are distinct concepts, intended to convey two independent ideas to the jury. Proper instructions should embody both concepts. Thus the instructions given on the doctrine were inadequate.

▇▇▇▇ The jury was instructed on the defense of contributory negligence but the trial court refused to give plaintiff's requested instructions on last clear chance. The language of

No. 207-C) and the distinction between assumption of risk and the ordinary and necessary acceptance of common everyday risks (BAJI No. 207-A).

[3] One of these instructions stated: "The elements of the defense of assumption of risk are a person's voluntary acceptance of the risk and an appreciation of the magnitude of that risk. Thus, even if you find that plaintiff realized that his activity was attended with some degree of danger, to apply the principle of assumption of risk you must also find that he appreciated the magnitude of that danger."

Another stated: "You are instructed that before a person may be said to have assumed the risk, you must find that he knew what risk he was assuming and that he appreciated that risk."

And the final one stated: "Before you apply the principle of assumption of risk, you must find that plaintiff had actual knowledge of the danger."

the requested instruction was identical to that set forth in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 740 [306 P.2d 432], and is not challenged here. It is argued that such instructions were properly refused because plaintiff's attempted dive was the only evidence of contributory negligence and that since it was simultaneous with the occurrence of the accident the doctrine is not applicable. Defendants rely upon the rule of *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 488 [283 P.2d 1], that in any ''case in which plaintiff's state of helplessness, resulting from his own negligence, is created so nearly simultaneously with the happening of the accident that neither party may be fairly said to have thereafter a last clear chance to avoid the accident.''

Plaintiff does not dispute the rule of the *Doran* case, nor its application to the attempted dive, but he does contend that the act of diving was not the only evidence of possible contributory negligence on his part. He argues that the jury could have found contributory negligence (1) in his failure to try to move sooner, or (2) in remaining in the water to be picked up rather than swimming to shore. There is no merit in either of these arguments. There was considerable testimony regarding the fact that plaintiff, because he was burdened by water skis and was wearing a large and bulky type of life preserver, was relatively immobile. There is no testimony that would support a finding of negligence based on plaintiff's failure to try to move sooner. Nor is there any evidence that would support a finding of negligence because plaintiff remained in the water rather than swimming to shore 100 yards away. There is nothing in the record from which the jury could infer that plaintiff ever considered the possibility or that he should have. Not only was plaintiff heavily burdened and relatively immobile, thus making an attempt to swim highly impractical if not dangerous, but he knew that it was normal procedure for a downed skier to be picked up by the boat and this routine had been followed without exception on all prior runs.

However, there does exist another possible basis of contributory negligence. The jury could reasonably have concluded that one cause of the accident may have been Mrs. McCormick's inexperience, and that plaintiff failed to exercise due care for his own safety and protection by initially consenting to ski with Mrs. McCormick driving the boat because he knew or should have known that she was inexperienced. Thus, even

if the jury could have found that plaintiff did not assume the risk of such injuries because he did not in fact know of Mrs. McCormick's inexperience or because he did not appreciate the magnitude of the risk created thereby, still the jury could have found him negligent in failing to discover that risk. (See, e.g., *Austin* v. *Riverside Portland Cement Co., supra,* 44 Cal.2d 225, 235; Prosser, Torts (2d ed. 1955) § 51, p. 288, § 55, p. 305.)

The jury could reasonably have found that plaintiff was in a helpless position in the water because of his own negligence in consenting to ski with an inexperienced driver. All agree that plaintiff was clearly visible in the water and the jury could have found that Mrs. McCormick knew of plaintiff's immobility and knew or should have known he was unable to escape the peril of an oncoming boat. The jury could also have concluded that due to inexperience, negligence, or to a combination of both, Mrs. McCormick took her eye off plaintiff and could have avoided the accident by at all times watching him or that she turned the boat to the right when no turn or a turn to the left might have avoided the accident or that she could have acted more quickly and turned off the motor in time to stop it before plaintiff was struck. Thus there was substantial evidence to support a finding on each of the elements of last clear chance. (See *Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477.) It was error, therefore, to refuse to let the jury determine, under appropriate instructions limiting the application of the doctrine to the circumstances to which it might be applicable, whether Mrs. McCormick had the last clear chance to avoid this accident.

Thus, there were errors, serious and prejudicial errors, in the instructions. These require a reversal.

The judgment is reversed.

Gibson, C. J., Traynor, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Burke in the opinion prepared by him for the District Court of Appeal (Cal.App.) 25 Cal.Rptr. 486.

Schauer, J., concurred.