[Civ. No. 224. Fifth Dist. Aug. 21, 1963.]

KENNETH C. HARTLERODE et al., Plaintiffs and Appellants, v. CHARLES EDWARDSEN, Defendant and Respondent.

· Lubin & Kirkpatrick, Alfred Lubin and Henry Kirkpatrick for Plaintiffs and Appellants.

Maddox, Abercrombie, Kloster & Jacobus and Dickson F. Maddox for Defendant and Respondent.

BROWN (R.M.), J.—Appellants filed a complaint against respondent for damages for the wrongful death of their 22-year-old son who resided with them. Appellants appeal from the judgment on a general jury verdict for the respondent.

The appellants' son was killed in a one-car accident, which car was driven by the respondent, aged 21 years, in which the decedent was lying down in the seat of the station wagon directly behind the front seat. At 10 o'clock in the morning the deceased went over to the respondent's house where the latter was eating breakfast, and shortly thereafter the two left in the appellants' car for what turned out to be approximately 130 miles of driving in their vicinity for the next 10 or 11 hours. The boys being sign painters, stopped at various potential jobs, checked on paint jobs that they had been doing, visited the residence of one of their friends, took one of the friends on a ride, went to a garage to inquire about a transmission, went to another residence to see about a paint job, discussed a paint spray rig. In the afternoon they and one Ed Jenks split two cans of warm beer, put a starter on a car; later in the afternoon they each had a cold glass of draft beer; early in the evening had two taps of beer, a hamburger and potato chips, played some shuffleboard at one location, and later at the Jenks' home the respondent had a cup of coffee and possibly some cake, fixed a gas heater and about 11 p.m. the decedent asked the respondent to "Go ahead and drive. I'm tired." Thereupon, the respondent did drive, he having driven the car many times before, and the decedent got in the front seat and the two arrived in Visalia about midnight, drove through the town, checked an uncompleted sign,

drove by various drive-ins without stopping, and left for home. At about 1 a.m. they stopped at a Woodlake sign intersection, whereupon the decedent said, "Wait, while we are here I am going to lie down in the back seat," to which the respondent said, "Go ahead." The respondent continued to drive; there was no further conversation; and respondent testified he didn't know for sure whether or not the decedent fell asleep.

On these various errands and visits, the decedent drove the station wagon from about 10:30 a.m. until about 3 p.m.; Jenks drove his car from about 3 p.m. until the young men returned to the Jenks' home about 10:30 p.m. Respondent then drove the station wagon from about 11 p.m. until about 1:30 a.m. at which time the accident occurred.

The respondent recalled that as they approached the Buckaroo Inn, which was approximately 640 feet from the point of the accident, he did not know whether or not the decedent was asleep and did not speak to him at that time, but that the decedent must have been lying down in the back seat because he did not see him sitting up. As the car passed the Buckaroo Inn the respondent stated that he turned his head to the left to see who was parked there, out of curiosity, but as far as he knew, his car continued to go straight ahead; that his speed was 50-60 miles per hour; that the decedent was still lying down; that from the Inn, he went down a downgrade with a slight curve; that he had no recollection as to whether or not he applied his brakes; that his only recollection as to what happened when he was going downhill is that he was lying underneath the car after the accident; that he did not recall being drowsy or sleepy. The car apparently went off the edge of the highway for a distance of 180 feet and struck a large rock embedded in the earth three feet off the highway; the car turned over; the decedent was killed and the respondent was pinned in the overturned car.

During the trial the respondent denied ever stating to the appellants' lawyer during the investigation, "I recall being sleepy at about this time," but testified to the question "What do you recall at that time?" that he answered, "I don't recall anything but passing the Buckaroo. All I recall is laying under the car." He also told the lawyer in answer to the question "What caused the accident?" that "I guess I went to sleep."

The Highway Patrolman investigating the accident also testified that the respondent, in reply to the question of how

the accident happened, said, "I guess I went to sleep" and that the basis for that statement was "Because I do not know how the accident happened." According to the officer investigating the accident, there was a tire mark leading off the road for 180 feet leading up to the rock, with a tire track on the rock and a paint transfer similar to the paint on the car.

It had been raining during the day; the pavement was wet and there were tire marks in the mud leading up to the point of impact, but it was not raining at the time the accident occurred.

The pretrial order set forth the issues as to whether the decedent was a passenger, non-guest occupant, or a guest; whether there was negligence on the part of the defendant; whether the accident was caused solely and proximately by the negligence of the decedent; whether or not said accident was contributed to and caused by the negligence of the decedent; and whether or not there was an assumption of risk by the decedent.

▮▮▮ The trial court gave the jury instructions on the doctrine of assumption of risk, to which appellants objected on the ground that there was no evidence that the decedent had reason to anticipate or assume the risk of the respondent's negligent conduct and that there was no actual knowledge or appreciation by the decedent of the danger and voluntary acceptance of the risk. The trial court stated: "But they said there didn't need to be evidence, it could be inferred from the situation. I don't see how there is any difference. Here it is late at night, one guy is sleepy, it is obvious that the other guy is sleepy too." The word "they" refers to the appellate court in the case of *Ching Yee* v. *Dy Foon,* 143 Cal. App.2d 129 [299 P.2d 668]. (Note criticism of case in *Shahinian* v. *McCormick,* 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377].)

The facts in *Ching* are far different than the facts before us. In that case the sleeping appellant, after the long drive of several days, had questioned the driver about his sleepiness and noted his drowsiness, and this was evidence from which her knowledge or appreciation of such a risk might be inferred. In the case before us, there was no such inference, in that the driver had stated that he was not tired or sleepy, nor was he aware that the lateness of the hour or the small quantities of beer which he had consumed over a long period of time had any such effect on his faculties. He was able to drive, did not speed, and his faculties were not impaired. It is difficult to

determine how the trial court felt that the decedent was chargeable with knowledge of an inferred physical condition of the defendant which he himself did not recognize.

█ The doctrine of assumption of risk is discussed in *Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, at page 567, where it is said : ''Actual knowledge of the particular risk and appreciation of the magnitude thereof are not interchangeable but are independent and essential elements of the doctrine.''

In *Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 275 [32 Cal.Rptr. 193, 383 P.2d 777] the court stated that it was prejudicial error to instruct on the doctrine of assumption of risk in that it could not be said that in the absence of the error a different verdict would not have been probable ; that actual—not merely constructive—knowledge of the danger is required ; and distinguishing this doctrine from contributory negligence, since, although arising from the same set of facts, the two doctrines frequently overlap. (See *Hook* v. *Point Montara Fire etc. Dist.,* 213 Cal.App.2d 96, 99 [28 Cal.Rptr. 560].)

█ In *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243], the court said at page 836: ''. . . a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.''

The court said, in *Hidden* v. *Malinoff,* 174 Cal.App.2d 845, 855 [345 P.2d 499], quoting from *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623-624 [255 P.2d 785] : '' 'In determining, from a consideration of the entire record, whether the error prejudiced plaintiffs' rights . . . the rule is no different from that applicable in a criminal case and stated as follows : ''If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable, the erroneous ruling constitutes a miscarriage of justice within the meaning of the constitutional provision.'' (*People* v. *Newson,* 37 Cal.2d 34, 45 [230 P.2d 618] ; see also *People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873].) It so appears here.' ''

In other cases involving assumption of risk, such as *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158 [265 P.2d 904], the theories of assumption of risk and contributory negligence are discussed, and that case holds that it was prejudicial error to present such instructions on assumption of risk as

such would permit the jury to find that the injured person had assumed the risk without finding that she had actual knowledge of the danger.

Therefore, we hold that it was prejudicial error to so instruct the jury on the assumption of risk because there was no evidence that the victim appreciated a specific danger involved or had any knowledge of the particular danger such as the magnitude of the risk, or assumed any risk, and that knowledge is not interchangeable with appreciation of the risk.

The trial court submitted the case to the jury upon three issues: negligence, contributory negligence, and assumption of risk. The record reflects conflicting evidence on the issues of negligence and contributory negligence upon which reasonable minds might differ. Thus, these issues were properly submitted to the jury as questions of fact. We find no error in the instructions given on these two issues.

However, as we have heretofore pointed out, the issue of assumption of risk was not applicable under the facts of the case when viewed in the light of *Vierra* v. *Fifth Avenue Rental Service, supra,* and *Shahinian* v. *McCormick, supra.* These recent decisions hold that when a case is submitted to a jury upon alternative issues or theories of defense and the doctrine of the assumption of risk is erroneously submitted as one of the issues, the error is reversible. The reason, as pointed out by the Supreme Court, lies in the reviewing court's impossible task of determining whether the jury decided the case upon the issue of assumption of risk, which should not have been submitted to it, or whether it reached its decision upon the issues of negligence or contributory negligence. That is exactly the situation we have here, and we are impelled to reverse the judgment by reason of the erroneous instruction submitting to the jury the issue of assumption of risk.

The judgment is reversed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied September 16, 1963.