[Civ. No. 27751.   Second Dist., Div. Four.   Sept. 24, 1964.]

EDWARD H. HORNER, Plaintiff and Respondent, v. JOHNNIE BARBER et al., Defendants and Appellants.

Cushman & Grover, Melvin B. Grover and John C. Salyer for Defendants and Appellants.

Heily & Blase and Edward L. Lascher for Plaintiff and Respondent.

BURKE, P. J.—Plaintiff and defendants occupied separate parts of the same building, defendants conducting a garage business in their portion. A fire started in the portion occupied by defendants, causing a fire loss to plaintiffs. The action has been tried twice. Defendants prevailed at the first trial, but a new trial was granted and at the second

trial a jury returned a verdict for plaintiff. Judgment was entered thereon, defendants' motion for a new trial was denied, and defendants appeal.

In support of their appeal, defendants urge insufficiency of the evidence to establish negligence, improper and prejudicial reception of inadmissible evidence, and improper and prejudicial instruction of the jury on the subject of res ipsa loquitur. They present 47 alleged errors occurring during the trial, most of them relating to the admission of improper expert opinions as to the cause of the fire.

It was plaintiff's theory that the fire which started at about 2:30 a.m., resulted from the ignition of some kind of fuel by some ''source of ignition,'' allegedly the pilot or burner, or both, of a gas heater located in defendants' office which adjoined the garage in which a number of vehicles were stored.

The trial court instructed the jury on the doctrine of res ipsa loquitur.[1]

The conditions requisite for the invocation of the doctrine of res ipsa loquitur, which the court incorporated in the conditional portion of the instruction are: (1) that

---

[1]''One of the questions for you to decide in this case is whether the fire involved occurred under the following circumstances:

''First, that it is the kind of fire which ordinarily does not occur in the absence of someone's negligence;

''Second, that the fire was caused by a fuel of some sort originating in the defendant's section of the building, being ignited by a source of ignition within the Barber area of the building, and

''Third, that the fire was not due to any voluntary action or contribution on the part of the plaintiff.

''If, and only in the event that you should find all these conditions to exist, you are instructed as follows:

''From the happening of the fire involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference, that is, that the defendants were negligent and such negligence proximately caused the fire.

''When there is any evidence to the contrary, you must weigh all the evidence bearing upon the issue of defendants' negligence. If the evidence tending to prove that the fire was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

''In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the fire, that is, a definite cause for the fire, in which there is

it is the kind of accident which ordinarily does not occur in the absence of someone's negligence; (2) that it was caused by an agency or instrumentality in the exclusive control of the defendant; and (3) that the accident was not due to any voluntary action on the part of the plaintiff. (*Shahinian* v. *McCormick,* 59 Cal.2d 554, 559 [30 Cal.Rptr. 521, 381 P.2d 377]; *Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].) The facts here involved, plaintiff contends, fulfill such requirements and the doctrine was properly applied. Defendant asserts the contrary.

The underlying hypothesis for res ipsa loquitur is that, when certain elements exist and when the facts relating to the happening or occurrence of an accident are either disputed (*Shahinian* v. *McCormick, supra,* 59 Cal.2d 554) or unknown (as in *Cho* v. *Kempler,* 177 Cal.App.2d 342, 348 [2 Cal.Rptr. 167, 76 A.L.R.2d 774]), an inference arises of negligence, based on the presumed probability which entitles a plaintiff to a res ipsa loquitur instruction.

''Of course, negligence and connecting defendant with it, like other facts, can be proved by circumstantial evidence. There does not have to be an eyewitness, nor need there be direct evidence of defendant's conduct. There is no absolute requirement that the plaintiff explain how the accident happened.'' (*Fowler* v. *Seaton,* 61 Cal.2d 681, 687 [39 Cal. Rptr. 881, 394 P.2d 697].)

With these basic rules regarding application of the doctrine of res ipsa loquitur, we turn to a more detailed review of the evidence, considering it in the manner most favorable to the prevailing plaintiff.

Defendants were engaged at the time of the fire in a garage auto repair and auto parts business at another location, and they took over the portion of the premises involved in the fire a few days prior to the occurrence of the fire on December 10, 1960. In acquiring the new location they caused certain alterations to be made in the premises, including the installation of windows in a portion partitioned off as an office and the installation of an unvented type gas

no negligence on the part of the defendant, or (2) such care on the defendants' part as leads to the conclusion that the fire did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue.''

heater in the office, which heater was connected by a gas company employee. There were a number of vehicles stored by defendant in the garage portion of the premises, separated from the office by a partition, the windows in which were closed, and a doorway which had a small open space, of ½ to ¾ of an inch, between the bottom of the door and the flooring of the office. It was known that at least one, and possibly two, of the vehicles in the stored area contained gasoline in the tanks. Several of these tanks were within 20 feet of the office heater, and experts testified that automobile gasoline tanks always contain a small vent in the gas cap to permit the escape of vapors. These vapors are flammable at temperatures ranging down to 52 degrees below zero. On the night of the fire the temperature was approximately 37 degrees, and from this it was established that the vehicles would be giving off flammable vapors.

While the exact cause of the fire was unknown, Battalion Chief Gustafson, conceded by defendants to be an expert, testified that the most probable fuel involved in the fire was gasoline vapor; that such vapor is heavier than air and tends to remain along the floor; that there was strong physical evidence from the excessive charring of the wood of the partition near the floor that the fire started close to the floor; that it was probable that a slight draft created by either the pilot light of the heater in the office or its burner, or both, drew the vapors from under the automobiles along the floor of the garage under the door in the partition to the heater in the office causing a flashing "explosion" which carried the fire back along the path of the vapors to the greater accumulation of vapor underneath the vehicles and that this accounted for the greater amount of fire damage in the garage portion close to the vehicles than occurred within the office. Chief Gustafson testified that he did not know the cause of the fire; that there were several possible causes, including arson by someone gaining access to the building and starting the fire; that, in an early report which he had filed following the fire, he had speculated that the fire might have been caused by someone as an act of revenge against the garage owner for refusing to deliver cars upon which repair work had been done until the garage liens were paid, but that an investigation of these possibilities was fruitless.

The testimony conflicted as to the probable cause of the fire and the finder of fact could have determined it either

way. From its verdict we conclude that it determined that it was more likely that the fire occurred from gasoline vapors ignited in the manner testified in the opinion evidence of both Chief Gustafson and one other expert. Indeed, the evidence preponderated against the probability that the origin of the fire was incendiary. Defendant Johnnie Barber testified that it was his habit to check the doors and to lock them and that they were secured from the inside by a pin which dropped into the concrete floor and from the outside by a padlock, and that access could not be gained to the premises except by someone breaking in; that probably a crowbar would be necessary. A police officer, in making his rounds, had checked the building with a spotlight approximately 20 to 30 minutes before the fire and saw no evidence of any breaking in, and the fire captain who arrived at the scene as the fire was in progress testified that it was necessary to use a crowbar on the lock or hasp in order to gain entry. It was the habit of the defendant's wife, who was the bookkeeper for the concern and who occupied the office during the daytime, to turn down the thermostat on the heater as she left the building, and while she could not testify with absolute certainty as to turning down the heater thermostat she thought that she had done so. There was no automatic cutoff valve, or night switch, which would have prevented the burner from igniting during the night as and when the temperature dropped to whatever level was indicated on the thermostat. In any event, neither the action of the defendants in adjusting the thermostat, nor any automatic action of the heater itself, would have resulted in turning off the pilot which remained as a source of ignition in the office, assuming that sufficient inflammable vapors were to gather along the floor under the heater and to arise to a point where the pilot flame would have ignited them.

An expert witness testified that there were other possibilities for igniting vapor, such as a static spark, and that certain conditions existing in the storage portion of the garage were dangerous. His opinion was that the probable source of ignition was the heater and that the probable fuel was the gasoline vapor.

It is unnecessary to consider other conditions found on the premises by the firemen supporting speculation regarding other probabilities.

During the early stage of the trial, the judge indicated that he was reserving judgment regarding applicability of

the doctrine of res ipsa loquitur but after hearing the evidence he determined that it was a proper case for its submission to the jury. Certainly, the fire was one which ordinarily does not occur in the absence of someone's negligence, absent some evidence that it was incendiary in nature, and there was no substantial evidence to sustain this possibility.

The stored vehicles, the proximity of the office to the vehicles, the installation of the heater and the absence of safety devices properly could lead the judge to conclude that these were instrumentalities in the exclusive control of the defendant, as were the premises themselves, and the accident was not due to any voluntary action on the part of the plaintiff.

In *Gentleman* v. *Nadell & Co.*, 197 Cal.App.2d 545, 553, 554 [17 Cal.Rptr. 389], it was held that the doctrine was inapplicable where the injury might have been brought about by one of two or more causes neither of which is included or excluded by any affirmative evidence. "Dean Prosser states: 'On the other hand there are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault.' He then gives examples including 'a fire of unknown origin' and says that such occurrences 'will not in themselves justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply.' (Prosser on Torts (2d ed. 1955) § 42, p. 203; [citations].) There is no sound basis for a contention that the fact of the storage of some inflammable materials and the fact of a subsequent fire were together sufficient, in and of themselves, to give rise to an inference as to causation in the nature of the inference which comes into being where the doctrine of res ipsa loquitur is applicable.

"As stated in *Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519 [256 P.2d 677], at page 538: '. . . it is settled law that if conflicting inferences may reasonably be drawn from the evidence, even if it is uncontradicted or all facts are admitted, which inference shall be drawn is a question for the trier of facts and its decision cannot be set aside by the appellate court.' The trial court was clearly warranted in determining that the plaintiff had failed to sustain her burden of proof on the issue of causation. . . . This court cannot reweigh the evidence but can only determine whether or not there is substantial support in the evidence for the findings of the trial court. [Citation.] With respect

to the issues discussed in this paragraph, such support clearly appears.''

However, in the case before us the trial court reached the contrary conclusion and determined that the plaintiff had sustained his burden of proof on the issue of causation to a sufficient degree to warrant the matter going to the jury. Our review of the evidence indicates that there was substantial evidence to support the trial court judge in this conclusion and to support the verdict of the jury.

Our Supreme Court has recently indicated in *Fowler* v. *Seaton,* 61 Cal.2d 681, 687 [39 Cal.Rptr. 881, 394 P.2d 697], that: ''Res ipsa loquitur may apply where the cause of the injury is a mystery, if there is a reasonable and logical inference that defendant was negligent, and that such negligence caused the injury. (Prosser on Torts, *supra,* at p. 204.)

''As applied to this case, the test is whether a reasonable man could reach the conclusion from the evidence offered that it was more likely than not that the injury involved was the result of negligence on the part of defendant.''

Applying this rule, we hold that there was no error on the part of the trial judge in the application of the doctrine to the facts of the case at hand, and a review of the transcript indicates that the other errors complained of have either no merit or are so inconsequential that they could not have resulted in such prejudice to the defendant as to warrant a reversal. The case was very fairly and objectively tried and a very broad latitude was permitted in the cross-examination of plaintiff's expert witnesses.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.